# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

GREGORY GIBBS and TATONYA
HUGGINS on behalf of themselves and those
similarly situated,

               Plaintiffs,                   **CASE NO.:  2:18-CV-434-SPC-MRM**

vs.

MLK EXPRESS SERVICES, LLC, a Florida
Limited Liability Company; AG PLUS
EXPRESS, LLC, a Florida Limited Liability
Company; AMAZON.COM, INC., a Foreign
for Profit Corporation; AMAZON LOGISTICS,
INC., a Foreign for Profit Corporation;
AMAZON.COM SERVICES, INC., a Foreign
for Profit Corporation;  MANIHONG M.
PHANOUVONG, Individually, and LILA V.
PHANOUVONG, Individually,

               Defendants.             /

## FIRST AMENDED NATIONWIDE COLLECTIVE ACTION COMPLAINT[1]

Plaintiffs, GREGORY GIBBS and TATONYA HUGGINS on behalf of themselves and

those similarly situated, by and through undersigned counsel, file this First Amended Complaint

against Defendants, MLK EXPRESS SERVICES, LLC ("MLK"), AG PLUS EXPRESS, LLC

("AG PLUS" together with MLK, the "MLK Defendants"), AMAZON.COM, INC. ("ACI"),

AMAZON LOGISTICS, INC. ("ALI"), AMAZON.COM SERVICES, INC. ("ACS", together

with ACI and ALI, "Amazon"), MANIHONG M. PHANOUVONG ("M. PHANOUVONG"),

and LILA V. PHANOUVONG ("L. PHANOUVONG") (collectively, "Defendants") and state

as follows:

---

[1] This amendment is filed pursuant to Fed. R. Civ. P. 15(a)(1), and it relates back to the date of the original
pleading pursuant to Fed. R. Civ. P. 15(c).

## I.      NATURE OF THE CASE

1.      Amazon is the largest digital retailer in the United States, recently becoming the second company in world history to reach $1 trillion in value.[2]   In the second quarter of 2018 alone, Amazon's net sales were $52.9 billion, compared with $39 billion in the second quarter of 2017.[3]  Naturally, "the number of packages that Amazon needs to . . . handle has doubled in the past five years to about 1.2 billion" packages per year.[4]

2.      Amazon prides itself on being a company that is "customer obsessed."  For that reason, Amazon has taken greater control over its deliveries in order to ensure customer satisfaction—control that it previously lacked when utilizing traditional delivery channels such as FedEx and UPS.  In order to take greater control over its delivery processes, Amazon created its own delivery channel.  Amazon now contracts with various package delivery companies all around the country, including MLK and AG Plus and their employees, in order to handle the influx of customer orders, and to retain control over every aspect of the delivery process.

3.      This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") for Defendants' failure to pay Plaintiffs and other similarly situated employees overtime wages for all time worked in excess of forty (40) hours in a workweek in violation of the FLSA.  Plaintiffs brings this suit as a collective action pursuant to Section 216(b) of the FLSA.

4.      The Fair Labor Standard Act of 1938, 29 U.S.C. § 201 et, seq. ("FLSA") was enacted to ensure "the maintenance of the minimum standard of living necessary for health,

---

[2]  *See,* Amazon Just Became the Second Company to Reach $1 Trillion, http://time.com/money/5386380/amazon-1-trillion-jeff-bezos-net-worth. .
[3]  *See* Amazon Press Release to Investors, http://phx.corporate-ir.net/phoenix.zhtml?c=97664&p=irol-newsArticle&ID=2360348..
[4]  *See* Amazon is forging further into deliveries, https://www.businessinsider.com/amazon-launches-delivery-service-partner-program-2018-6.

efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA establishes minimum wage and overtime requirements for covered employees to achieve this broad remedial purpose. 29 U.S.C. §§ 206, 207. These provisions, and the private right of action granted to employees, prevent employers from pilfering rightfully earned wages of employees. *See, Billingsley v. Citi Trends Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

5.       As non-exempt employees, Plaintiffs are entitled to the applicable overtime wage rate for each overtime  hour they were suffered and permitted to work by Defendants. *Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied*, 134 S.Ct. 62 (U.S. 2013) ("To be 'employed' includes when an employer 'suffer[s] or permit[s] the [employee] to work'").

6.       Defendants failed to pay Plaintiffs, and those similarly situated for all overtime hours worked, pursuant to a policy applicable to Plaintiffs and all similarly situated employees within the defined classes, whereby Defendants purported to pay a "day-rate" with no overtime premiums when Plaintiffs and those similarly situated worked in excess of 40 hours per week.

7.       Defendants also failed to pay Plaintiffs, and those similarly situated, minimum wages in certain workweeks, pursuant to a policy applicable to the Plaintiffs and all similarly situated employees within the defined classes.

8.       Defendants' policies and conduct violate the FLSA, which requires non-exempt employees, such as the Plaintiffs, to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay, and also that they receive at least the federally mandated minimum wage per week. *See* 29 U.S.C.§§ 206, 207(a).

9.       Plaintiffs, Gregory Gibbs and Tatonya Huggins, bring these collective actions to recover the unpaid overtime and minimum wages owed to them and all other similarly situated

drivers and employees of the Defendants.

10.     Plaintiff Gregory Gibbs' consent to act as Class Representatives in this Section 216(b) collective action is filed at D.E. 2.

11.     Plaintiff Tatonya Huggins' consent to act as a Class Representative in this Section 216(b) collective action is filed at D.E. 11-1.

## II.     JURISDICTION AND VENUE

12.     Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. § 201, *et seq*., hereinafter called the "FLSA") to recover unpaid back wages, an additional equal amount as liquidated damages, obtain declaratory relief, and reasonable attorneys' fees and costs.

13.     This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §1331, arising under 29 U.S.C. §216(b).

14.     Venue is proper in this judicial district because at least one of Defendants maintains offices within this judicial district and the events giving rise to Plaintiffs' claims occurred in this judicial district.

## III.     PARTIES

### A.  Plaintiffs

15.     At all times relevant hereto Plaintiff, Gregory Gibbs resided in this judicial district.

16.     At all times relevant hereto Plaintiff, Tatonya Huggins, resided in this judicial district.

17.     At all times relevant hereto, Plaintiff, Gregory Gibbs, handled goods that had moved in interstate commerce on a daily basis delivering packages to customers of Amazon.

18.     At all times relevant hereto, Plaintiff, Tatonya Huggins, handled goods that had moved in interstate commerce on a daily basis delivering packages to customers of Amazon.

19.     At all times relevant hereto, Plaintiff, Gregory Gibbs has been a current or former "employee" of Defendants as that term is defined by the FLSA, 29 U.S.C. §201 *et seq*, as he was suffered and permitted to work delivering packages to Amazon customers in connection with their purchases from Amazon.com.

20.     At all times relevant hereto, Plaintiff, Tatonya Huggins, has been a current or former "employee" of Defendants as that term is defined by the FLSA, 29 U.S.C. §201 *et seq*, as she was suffered and permitted to work delivering packages to Amazon customers in connection with their purchases from Amazon.com.

**B.  Defendants**

21.     Defendant, MLK, is a domestic for-profit limited liability company that operates and conducts business in this county, as well as throughout Florida, and is therefore within the jurisdiction of this Court.

22.     MLK was served with process and responded to the original complaint.

23.     Defendant AG Plus is a domestic for-profit limited liability company that operates and conducts business within this county as well as throughout Florida, and is therefore within the jurisdiction of this Court.

24.     AG Plus may be served with process upon its registered agent Aristides Guevara, at 11819 Via Lucerna Circle, Windermere, Florida, 34786.

25.     Defendant ACI is a foreign corporation that operates and conducts business in this county, as well as nationwide, and is therefore within the jurisdiction of this Court.

26.     ACI may be served with process upon its registered agent Corporation Service

Company, at 1013 Centre Road, Wilmington, Delaware, 19805.

27.     Defendant ALI is a foreign corporation that operates and conducts business in this county, as well as nationwide, and is therefore within the jurisdiction of this Court.

28.     ALI, through counsel, accepted service of, and responded to the original complaint.

29.     Defendant ACS is a foreign corporation that operates and conducts business in this county, as well as nationwide, and is therefore within the jurisdiction of the Court.

30.     ACS, through counsel, accepted service of, and responded to the original complaint.

31.     M. PHANOUVONG is a citizen and resident of Florida, and was served with process and responded to the original complaint.

32.     M. PHANOUVONG is an authorized member and co-owner of MLK.

33.     M. PHANOUVONG has exerted a substantial amount of control over significant aspects of MLK's day-to-day operation during all relevant time periods.

34.     In managing the day to day operations of MLK, M. PHANOUVONG makes decisions concerning work, staffing, personnel matters, pay policies and compensation.

35.     L. PHANOUVONG is a citizen and resident of Florida, and has been served with process and responded to the original complaint.

36.     L. PHANOUVONG was a member and co-owner of MLK at the time of the filing of the original complaint.

37.     On or about July 18, 2018, MLK filed an amendment to its Articles of Organization removing L. PHANOUVONG as a member.

38.     Notwithstanding, L. PHANOUVONG has exerted a substantial amount of control

over significant aspects of MLK's day-to-day operation during all relevant time periods.

39.     In managing the day-to-day operations of MLK, L. PHANOUVONG makes decisions concerning work, staffing, personnel matters, pay policies, and compensation.

40.     On information and belief, MLK and AG Plus acted in all respects material to this action as the agent of the other, carried out a joint scheme, business plan or policy in material respects hereto, and the acts of MLK and AG Plus are legally attributable to each other.

41.     On information and belief ACI, ACS and ALI acted in all respects material to this action as the agent of the other, carried out a joint scheme, business plan or policy in material respects hereto, and the acts of ACI, ACS, and ALI are legally attributable to each other.

42.     With respect to the MLK Sub-Class (defined below), the Defendants acted in all respects material to this action as the agent of the other, carried out a joint scheme, business plan or policy in material respects hereto, and the acts of each Defendant are all legally attributable to each other Defendant.

43.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' business or affairs and with the authorization of the Defendants.

## IV.     FLSA COVERAGE

"The requirements to state a claim of a FLSA violation are quite straightforward." *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008).   To state a claim under the FLSA for unpaid wages, an employee must allege (1) an employment relationship; (2) that the employer or employee engaged in interstate commerce;

and (3) that the employer failed to pay overtime compensation and/or minimum wages. *Id.*

A. ***Employment Relationship***

44. The FLSA defines the term "employer" to broadly include "any person acting directly or indirectly in the interest of an employer in relation to any employee". 29 U.S.C. 203(d).

45. On information and belief, Defendant Amazon.com Inc., is the parent corporation of Amazon.com Services, Inc. (formerly Amazon.com, LLC), as well as Amazon Logistics, Inc., and together they operate one of the largest, if not the largest, ecommerce and logistics company in the world.

46. Through the operation of the Amazon.com website ([www.amazon.com](www.amazon.com)) customers throughout the United States can and do purchase goods and/or materials which are then shipped throughout the United States to each customer's address.

47. In addition, Amazon is in the business of providing delivery service to customers, and that is the service that delivery drivers, such as Plaintiffs, provide. The drivers' services are fully integrated into Amazon's business and managed by Amazon due to the level of control and oversight utilized by Amazon.

48. To ensure the highest customer service, satisfaction and companywide uniformity, Amazon dictates and directly manages the work of Plaintiffs' and other local delivery drivers' or driver associates' (the term used by Amazon) employment with local delivery companies such as the MLK Defendants by, among other things:

        a. Requiring all drivers to submit to an Amazon background check and participating in the decision to hire delivery drivers;

    b.   Training all drivers;

    c.   Dictating the manner and type of clothing to wear;

    d.   Determining the make, model and style of delivery van to be used while delivering packages;

    e.   Determining the location where Amazon packages are to be unloaded and loaded for delivery;

    f.   Monitoring the performance of pre-trip and post-trip delivery van inspections;

    g.   Determining where, when, how, and in what order packages are to be delivered to Amazon customers dictating the exact schedule to be followed;

    h.   Controlling the method and manner of troubleshooting delivery issues by requiring Plaintiffs and similarly situated employees to report problems delivering packages directly to Amazon;

    i.   Tracking delivery performance including but not limited to the number of packages delivered each day, the location of the driver at any given time, and the efficiency of the deliveries as reported through Amazon handheld devices or the Amazon Flex application for smart phones;

    j.   Supervising the work of each driver on a daily basis;

    k.   Evaluating the performance of each driver on a periodic basis in accordance with Amazon specific policies and procedures; and

    l.   Disciplining drivers up to and including termination.

49.    MLK and AG Plus recruited and paid the Plaintiffs, and others similarly situated, as local delivery drivers for Amazon responsible for delivering packages to Amazon's customers in Sarasota, Fort Myers, Orlando, and the surrounding areas.

50.    On information and belief, MLK and AG Plus are related entities under common ownership and/or supervision of M. PHANOUVONG and L. PHANOUVONG, and are organized for the sole purpose of providing local delivery or last mile delivery services.

51.    On information and belief, MLK and AG Plus exist for the common business purpose of providing local or last mile delivery services to Amazon as an integral part of the

Amazon business operation for the common business purpose of delivering Amazon products directly to their customers.

52.    Stated differently, the MLK Defendants, and other local Amazon delivery companies, simply provide a delivery driver labor force to Amazon, to further Amazon's core business objective of providing delivery service to Amazon customers.

53.    On information and belief, AG Plus and MLK placed advertisements to hire local delivery drivers to deliver Amazon packages.

54.    On information and belief, Plaintiffs submitted applications to work and were provided new hire paperwork through AG Plus.

55.    On information and belief, Plaintiffs were hired by the MLK Defendants to deliver Amazon packages.

56.    On information and belief the MLK Defendants paid Plaintiffs for their work through MLK.

57.    The MLK Defendants determined Plaintiff's rate of pay, managed payroll, provided workers' compensation insurance, and determined whether Plaintiffs would receive a particular route at the start of each day.

58.    Both M. PHANOUVONG and L. PHANOUVONG have the authority to, and regularly exercised that authority to hire or fire, determine rates of pay, manage payroll, and dictate whether Plaintiffs would be allowed to drive on a particular day.

59.    On information and belief, the MLK Defendants, as well as other local delivery contractors, are directly and solely dependent on their delivery contracts with Amazon.

60.    On information and belief, the MLK Defendants, as well as other local delivery contractors, are solely dependent on payments made by Amazon to make regularly scheduled

payroll to the Plaintiffs and similarly situated delivery drivers.

61.     Plaintiffs and similarly situated delivery drivers are dependent on Amazon, at a minimum, because Amazon provides: (i) all of the packages to deliver as part of its core business; (ii) delivery instructions including when, where, how and in what order to deliver the packages; (iii) delivery support in the event there is an issue delivering a particular package;  and (iv) payment of wages through Amazon's payments under the delivery contracts with the local delivery companies, including the MLK Defendants.

62.     Based on the foregoing, Amazon.com Inc., is an employer as defined under the FLSA

63.     Based on the foregoing, Amazon.com Services, Inc., is an employer as defined under the FLSA.

64.     Based on the foregoing, Amazon Logistics, Inc., is an employer as defined under the FLSA.

65.     Based on the foregoing, MLK is an employer as defined under the FLSA.

66.     Based on the foregoing, AG Plus is an employer as defined under the FLSA.

67.     Based on the foregoing, M. PHANOUVONG is an employer as defined under the FLSA.

68.     Based on the foregoing, L. PHANOUVONG is an employer as defined under the FLSA.

69.     Defendants are employers as defined under the FLSA.

70.     "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *See Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) cert. denied, 134 S.Ct. 62 (U.S. 2013).

71.     Plaintiffs and the putative class members were employed by Defendants.

72.     Specifically, Plaintiffs and the putative class members were suffered and permitted to work unloading Amazon packages and delivering those packages on behalf of and for the sole benefit of Amazon.

73.     Defendants employed Plaintiffs and the putative class members as local or last mile delivery drivers at various locations within Florida and the United States.

74.     Defendants also jointly employed Plaintiffs and all other similarly situated delivery drivers.

75.     At all times material to this action Defendants directly or indirectly, controlled and directed all aspects of the day to day employment of Plaintiffs and all others similarly situated delivery drivers, including: (i) timekeeping; (ii) payroll; (iii) disciplinary actions; (iv) employment policies and procedures; (v) scheduling and hours; (vi) terms of compensation; (vii) human resources; (viii) hiring and firing; (vii) working conditions; and (viii) manner and method of such drivers' performance of their duties.

**B.   _Enterprise and Individual Coverage_**

76.     "The [FLSA] requires an employer to pay overtime compensation to an hourly worker if the employee can establish individual or enterprise coverage." _Silver v. Dr. Neal Krouse, D.O., P.A._, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2017)(citing _Thorne v. All Restoration Svcs., Inc_., 448 F.3d 1264, 1265 (11th Cir. 2006).

77.     Amazon.com, Inc. is an enterprise as defined within section 3(r)(1) of the FLSA. _See supra_ ¶¶ 45-47.

78.     Amazon Logistics, Inc., is an enterprise as defined within section 3(r)(1) of the FLSA. _Id._

79.     Amazon.Com Services, Inc., are each an enterprise as defined within section 3(r)(1) of the FLSA.  *Id.*.

80.     Amazon.com, Inc., Amazon Logistics, Inc., and Amazon.com Services, Inc., are together an enterprise as defined with section 3(r)(1) of the FLSA.  *Id.*

81.     MLK is an enterprise as defined within section 3(r)(1) of the FLSA.  *See supra* ¶¶ 49-52.

82.     AG Plus is an enterprise as defined within section 3(r)(1) of the FLSA.  *Id.*

83.     MLK and AG Plus are together an enterprise as defined within section 3(r)(1) of the FLSA. *Id.*

84.     The Defendants are an enterprise as defined within section 203(r)(1) of the FLSA.

85.     FLSA enterprise coverage requires that an enterprise have "employees engaged in commerce or in the production of goods for commerce," or have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A)(emphasis added); *See Polycarpe. V. E&S Landscaping Service, Inc.*, 616 F.3d 1217, 1222-26 (11th Cir. 2010).  Additionally, the enterprise must have greater than $500,000 in "annual gross volume of sales made or business done."  *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, 2008 WL 793660, at *2 n.6 (M.D. Fla. Mar. 24, 2008). Because today nearly all goods and materials are moved in or produced via interstate commerce, "virtually every business meeting the annual gross value requirement" is subject to enterprise coverage. *Id*.

86.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce and have at least two employees that handle or work on goods or materials that have been moved in or produced for commerce.  29 U.S.C. § 203(s).

87.     Defendants provide the last mile or local delivery of products and goods that are purchased from Amazon.com, the leading online retailer in the United States.

88.     Defendants are engaged in commerce, and Plaintiffs, and all those similarly situated, regularly handle goods or materials that have been moved in or produced for commerce, when delivering orders purchased on www.amazon.com.

89.     At all times relevant hereto, each Defendant had an annual gross volume of sales or did business of more than $500,000.00 per year.

90.     Collectively, at all times relevant hereto, Defendants had an annual gross volume of sales or did business of more than $500,000.00 per year.

91.     Therefore, at all material times relevant to this action, each Defendant was an enterprise covered by the FLSA, and as defined by 29 U.S.C. §203(r) and 203(s).

## V.     WAGE VIOLATIONS

92.     Defendants purported "day rate" failed to compensate delivery drivers at a rate of one and one half (1.5) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

93.     Defendants failed to compensate all of their delivery drivers at the federally mandated minimum wage rate for all weeks worked, in violation of 29 U.S.C. § 206.

94.     Defendants failed to keep accurate records of the hours Plaintiffs, and those similarly situated worked each week.

## VI.     CLASS DEFINITIONS

95.     Plaintiffs bring Count I,  II, III and IV of this lawsuit pursuant to section 216(b) of the FLSA as a collective action on behalf of themselves and the following class or subclass:

    a.   All Amazon local delivery drivers or driver associates who
         were solely paid a purported "day rate" and who worked

for any company that contracted with Amazon to provide local delivery services at any location within the United States, within the three year period preceding the filing of this Complaint (the "Amazon Local Driver Class"); and

b. All local delivery drivers or driver associates who were solely paid a purported "day rate" and who worked for the MLK Defendants to provide local delivery services at any location within Florida, within the three year period preceding the filing of this Complaint (the "MLK Sub-Class"),

96. The Amazon Local Driver Class and the MLK Sub-Class are collectively referred to as the "Classes."

## VII.  FACTUAL BACKGROUND.

97. Plaintiffs and class members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA by denying them all compensation due and owing for all hours worked in a given workweek.

98. The MLK Defendants are each one of many contractors who work for and are under the control of Amazon delivering Amazon's goods throughout the country.[5]

99. Plaintiffs and similarly situated employees worked for Defendants delivering items purchased from Amazon to the customers who purchased said items.

100. At all relevant times, Amazon has been associated with and/or related to the MLK Defendants with respect to Plaintiff and other similarly situated employees within the defined subclass such that they are an "employer" and a "joint employer" of Plaintiff and other similarly situated employees in that, *inter alia*:

a. Plaintiffs, and similarly situated employees, submitted to an Amazon background check, whereupon Amazon dictated whether Plaintiff could

---

[5] This nationwide collective action is intended to include all similarly situated local drivers who deliver for Amazon regardless of which contracting company they work through, and who were solely paid a purported "day rate".  A brief review of job postings on www.indeed.com for local Amazon delivery positions returns listings in at least 13 states utilizing a purported "day rate" payment scheme. This sample is merely for purposes of illustration and is not a complete or exhaustive search of all available Amazon delivery positions nationwide that pay a purported day-rate.

15

be hired;

b.      After being hired, Plaintiffs and similarly situated employees were trained by Amazon personnel with some participation from the MLK Defendants' personnel;

b.      Plaintiffs, and similarly situated employees, wore uniforms with Amazon branding and logos while delivering Amazon packages;

c.      Plaintiffs, and similarly situated employees, drove delivery vans that are branded with the Amazon logo;

d.      Each morning, Plaintiffs and similarly situated employees report to a warehouse operated by Amazon, located at either 4697 Elevation Way, Fort Myers, Florida or  2906 Corporate Way34221, Palmetto, Florida, where their vans are loaded with Amazon merchandise, and where they receive work instructions and direction from Amazon;

e.      Plaintiffs and similarly situated employees are required to unload Amazon packages that are transported by Amazon trucks after they arrive at the Amazon warehouse locations;

f.      Plaintiffs and similarly situated employees are provided a route sheet with the delivery locations and order of delivery already pre-determined and planned by Amazon;

g.      Plaintiffs and similarly situated employees have to report problems delivering packages directly to Amazon;

h.      On information and belief, Amazon tracks the performance of Plaintiffs and similarly situated employees through the use of Amazon issued handheld devices or the Amazon Flex application for smart phones;

i.      Plaintiffs and similarly situated employees are jointly supervised by Amazon in coordination with the MLK Defendants;

j.      On information and belief, Amazon has procedures in place to evaluate and discipline Plaintiffs and similarly situated employees, up to and including termination; and

k.      Plaintiffs and similarly situated employees are economically dependent on payments made by Amazon to the local delivery contractors.

101.    Plaintiff, Gregory Gibbs, was employed by Defendants from approximately September 13, 2017 through approximately February 1, 2018.

102.    Plaintiff, Tatonya Huggins, was employed by Defendants from approximately

November 2017 through February 2018.

103.    During the course of their employment, Plaintiffs and other similarly situated employees regularly worked in excess of forty (40) hours in individual workweeks.

104.    Defendants failed to pay Plaintiffs and similarly situated employees the overtime premium of one and a half times their regular rate of pay for all time worked in excess of forty hours in individual work weeks.

105.    Instead, Defendants paid Plaintiffs and those similarly situated to them solely purported "day rates," based on the number of days they worked, and additional compensation per package delivered after a completed route, irrespective of the number of hours they worked each week.

106.    Plaintiffs were paid a flat rate of $100 per day for work performed Monday through Friday, and sometimes paid $150 per day for work performed on either Saturday or Sunday.

107.    In addition to the "day rate" Plaintiffs were paid $1 dollar per package that they delivered as "rescue" or "help" pay when they delivered packages for other drivers after completing their route for the day.

108.    Prior to driving their routes, Plaintiffs and those similarly situated to them were routinely required to unload Amazon trucks each day.

109.    Defendants failed to pay Plaintiffs and those similarly situated anything whatsoever for the time spent unloading the Amazon trucks prior to driving their designated route, typically two (2) or more hours of work.

110.    Plaintiff Gibbs regularly worked more than forty (40) hours a week.

111.    It was not uncommon for Plaintiff Gibbs to work between 42 and 65 hours (or

more) in a given week.

112.    Plaintiff Huggins regularly worked more than forty (40) hours a week.

113.    It was not uncommon for Plaintiff Huggins to work between 45 and 65 hours (or more) in a given week, and during the Holiday season worked upwards of 100 hours in a given work week.

114.    All of Defendants' delivery drivers worked similar hours.

115.    As a result of the exorbitant hours worked, in some weeks Plaintiff Huggins and those similarly situated were paid less than the current established minimum wage.

## VIII.   COLLECTIVE ACTION ALLEGATIONS.

116.    Plaintiffs bring this lawsuit pursuant to 29 U.S.C. §216(b) as a collective action on behalf of the MLK Driver Class and Amazon Local Driver Class defined above.

117.    Plaintiffs and the class members were all local Amazon delivery drivers or driver associates and performed the same or similar job duties as one another in that they provided local delivery service at the direction and on behalf the Defendants.

118.    Further, Plaintiffs and the members of the collective action were subjected to the same pay provisions in that they were all paid "day rates," but were not compensated at time-and-one-half for all hours worked in excess of 40 hours in a workweek.

119.    Thus, the class members are owed overtime wages and/or minimum wages at the federally mandated minimum wage rate for the same reasons as Plaintiffs.

120.    The specific job titles or precise job responsibilities of each class member does not prevent collective treatment.

121.    All class members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

122.   All class members, irrespective of their particular job requirements, are entitled to compensation for all weeks worked at the federally mandated minimum wage rate.

123.   Although the exact amount of damages may vary across class members, the damages for class members can be easily calculated by a formula.

124.   The claims of all class members arise from a common nucleus of facts.

125.   Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all class members.

126.   Defendants' failure to pay overtime compensation and minimum wages as required by the FLSA results from generally applicable policies or practices of failing to assure that their drivers are/were paid for overtime hours and/or minimum wages.

127.   These policies and/or practices were uniformly applicable to Plaintiffs and the class members.

128.   Application of these policies and/or practices does/did not depend on the personal circumstances of Plaintiffs or those joining this lawsuit.

129.    Rather, the same policies and/or practices which resulted in the non-payment of minimum wages and overtime to Plaintiffs applied and continues to apply to all class members, regardless of which company they were paid through.

130.   Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiffs and the class members.

131.   Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, et seq., (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

132.    During the relevant period, Defendants violated § 7(a)(1) and § 15(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for one or more workweeks without compensating such employees for their work at a rate of at least the time-and-one-half for all hours worked in excess of 40 hours in a work week.

133.    During the relevant period, Defendants violated § 6, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for one or more workweeks without compensating such employees for their work at a rate at least equal to minimum wage.

134.    Defendants have acted willfully in failing to pay Plaintiffs and the class members in accordance with the law.

135.    Defendants have failed to maintain accurate records of Plaintiffs' and the class members' work hours in accordance with the law.

136.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

    c.  The time of day and day of week on which the employees' work week begins;

    d.  The regular hourly rate or pay for any workweek in which overtime compensation is due under Section 7(a) of the FLSA;

    e.  An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

    f.  The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

g.  The hours worked each workday and total hours worked each workweek;

h.  The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive or premium overtime compensation;

i.  The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

j.  The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

k.  The dates, amounts, and nature of the items which make up the total additions and deductions;

l.  The total wages paid each pay period; and

m.  The date of payment and the pay period covered by payment.

29 C.F.R. §§ 516.2, 516.5.

137.    Defendants have not complied with the federal law and have failed to maintain such records with respect to Plaintiffs, and the Amazon Local Driver Class and the MLK Sub-Class.

138.    Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and class members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.,* *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

## COUNT I

### Violation of the FLSA- Overtime Wages
*Plaintiffs on behalf of themselves and the Amazon Local Driver*
*Class*

Plaintiffs incorporate and re-allege paragraphs 1 through 138 as though set forth herein.

139.    This Count arises from Amazon's violation of the FLSA for their failure to pay the Amazon Local Driver Class, including Plaintiffs, one and a half times their regular rate of pay for all time worked in excess of forty (40) hours in a work week.

140.    Amazon directed Plaintiffs to work, and Plaintiffs did work, in excess of forty (40) hours in individual workweeks within the three (3) years prior to filing this lawsuit.

141.    The Amazon Local Driver Class were also directed to work in excess of forty (40) hours in individual workweeks within the three (3) years prior to filing this lawsuit.

142.    Plaintiffs and the Amazon Local Driver Class were entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual workweeks.

143.    Amazon did not pay Plaintiffs, and the Amazon Local Driver Class, overtime wages for all time worked in excess of forty (40) hours in individual workweeks.

144.    Amazon's failure to pay Plaintiffs, and the Amazon Local Driver Class overtime wages for all time worked in excess of forty (40) hours in individual workweeks was a violation of the FLSA.

145.    Amazon failed to keep adequate records of Plaintiffs' and the Amazon Local Driver Class's work hours and pay in violation of section 211(c) of the FLSA.  29 U.S.C. § 211(c).

146.    Plaintiffs and the Amazon Local Driver Class are entitled to recover unpaid overtime wages for up to three (3) years prior to the filing of this lawsuit because Amazon's violation of the FLSA was willful.

## COUNT II

### Violation of the FLSA – Overtime Wages
*Plaintiffs on behalf of themselves and similarly situated*
*employees on Behalf of the MLK Sub-Class*

Plaintiffs incorporate and re-allege paragraphs 1 through 138 as though set forth herein.

147.    This Count arises from Defendants' violation of the FLSA for their failure to pay the MLK Sub-Class, including Plaintiffs, one and a half times their regular rate of pay for all time worked in excess of forty (40) hours in a work week.

148.    Defendants directed Plaintiffs to work, and Plaintiffs did work, in excess of forty (40) hours in individual workweeks within the three (3) years prior to filing this lawsuit.

149.    The MLK Sub-Class were also directed to work in excess of forty (40) hours in individual workweeks within the three (3) years prior to filing this lawsuit.

150.    Plaintiffs, and the MLK Sub-Class were entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual workweeks.

151.    Defendants, did not pay Plaintiffs, and the MLK Sub-Class overtime wages for all time worked in excess of forty (40) hours in individual workweeks.

152.    Defendants' failure to pay Plaintiffs, and the MLK Sub-Class overtime wages for all time worked in excess of forty (40) hours in individual workweeks was a violation of the FLSA.

153.    Defendants failed to keep adequate records of Plaintiffs' and the MLK Sub-Class's work hours and pay in violation of section 211(c) of the FLSA.  29 U.S.C. § 211(c).

154.    Plaintiffs and the MLK Sub-Class are entitled to recover unpaid overtime wages for up to three (3) years prior to the filing of this lawsuit because Defendants' violation of the FLSA was willful.

## COUNT III

### Violation of the FLSA – Minimum Wages
*Plaintiffs on behalf of themselves and the Amazon Local Driver Class*

Plaintiffs incorporate and re-allege paragraphs 1 through 138 as though set forth herein.

155.    Amazon's practice of failing to pay Plaintiff Huggins, and the Amazon Local Driver Class at least the minimum wage rate violates the FLSA.  29 U.S.C. § 206.

156.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Amazon, Plaintiff or the Amazon Local Driver Class.

157.    Amazon failed to keep adequate records of Plaintiff's and the Amazon Local Driver Class's work hours and pay in violation of section 211(c) of the FLSA.  29 U.S.C. § 211(c).

158.    Plaintiff, and the Amazon Local Driver Class are entitled to recover unpaid minimum wages for up to three (3) years prior to the filing of this lawsuit because Amazon's violation of the FLSA was willful

## COUNT IV

### Violation of the FLSA – Minimum Wages
*Plaintiffs on behalf of themselves and the MLK Sub-Class*

Plaintiffs incorporate and re-allege paragraphs 1 through 138 as though set forth herein.

159.    The Defendants' practice of failing to pay Plaintiff Huggins, and the the MLK Sub-Class at least the minimum wage rate violates the FLSA.  29 U.S.C. § 206.

160.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to

Defendants, Plaintiff or the the MLK Sub-Class.

161.   Defendants failed to keep adequate records of Plaintiff's and the MLK Sub-Class's  work hours and pay in violation of section 211(c) of the FLSA.  29 U.S.C. § 211(c).

162.   Plaintiff and the MLK Sub-Class are entitled to recover unpaid minimum wages for up to three (3) years prior to the filing of this lawsuit because Defendants' violation of the FLSA was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment against Defendants as follows:

A.   That the Court determine that this action may be maintained as a collective action pursuant to Section 216(b) of the FLSA;

B.   A judgment in the amount of all unpaid minimum wages owed to Plaintiff Huggins, and the Amazon Local Driver Class and the MLK Sub-Class;

C.   A judgment in the amount of all unpaid overtime wages owed to Plaintiffs, and the Amazon Local Driver Class and the MLK Sub-Class;

D.   Liquidated damages in the amount equal to the unpaid minimum and overtime wages for Plaintiffs, and the Amazon Local Driver Class and the MLK Sub-Class;

E.   Reasonable attorneys' fees and costs of this action as provided by the FLSA;

F.   Such other and further relief as this Court deems appropriate and just.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable as a matter of right by jury.

DATED: September 13, 2018.

Respectfully submitted,

*/s/ Andrew R. Frisch*
ANDREW R. FRISCH
FL BAR No. 027777
AFrisch@forthepeople.com
PAUL M. BOTROS
FL BAR No. 0063365
PBotros@forthepeople.com
**MORGAN & MORGAN, P.A.**
600 N. PINE ISLAND ROAD, SUITE 400
PLANTATION, FL 33324
T: (954) WORKERS; F: (954) 327-3013

*Trial Counsel for Plaintiffs, and all others
similarly situated*