UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GREGORY GIBBS and TATONYA
HUGGINS, on behalf of himself and those
similarly situated,

      Plaintiffs,

v.                              Case No:   2:18-cv-434-FtM-38MRM

MLK EXPRESS SERVICES, LLC,
AMAZON LOGISTICS, INC.,
AMAZON.COM SERVICES, INC.,
MANIHONG M. PHANOUVONG, LILA
V. PHANOUVONG, AMAZON.COM,
INC. and AG PLUS EXPRESS, LLC,

      Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Plaintiffs' Motion to Conditionally Certify Collective Action

and Facilitate Notice to Potential Class Members and Incorporated Memorandum of Law, filed

on September 20, 2018.  (Doc. 40).  On October 25, 2018, Defendants MLK Express Services,

LLC, Manihong M. Phanouvong, Lila V. Phanouvong, (collectively, "the MLK Defendants")

and AG Plus Express, LLC, filed a Limited Opposition to the Motion to Conditionally Certify

Collective Action and Facilitate Notice to Potential Class Members.  (Doc. 62).  Defendants

Amazon.com, Inc., Amazon Logistics, Inc., and Amazon.com Services, Inc. ("Amazon") filed a

---

[1]  Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or
websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that
hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other
websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the
services or products they provide on their websites.  Likewise, the Court has no agreements with
any of these third parties or their websites.  The Court accepts no responsibility for the
availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or
directs the user to some other site does not affect the opinion of the Court.

Response in Opposition to Plaintiffs' Motion to Conditionally Certify Collective Action on October 25, 2019.  (Doc. 65).  On November 13, 2018, Plaintiffs filed separate Replies to Defendants' respective Responses in Opposition to conditional certification.  (Docs. 84, 85).  On November 27 and November 28, 2018, Amazon and the MLK Defendants and AG Plus, respectively, filed Sur-Replies in Opposition to conditional certification.  (Docs. 91, 93). Finally, on December 17, 2018, Plaintiffs filed a Sur-Sur Reply in Support of their Motion to Conditionally Certify a Collective Action and Facilitate Notice to Potential Class Members. (Doc. 99).  The matter is ripe for review.

I.    **Background**

        A.    **Allegations**

        This is a Fair Labor Standards Act ("FLSA") putative collective action.  (Doc. 35). Plaintiffs Gregory Gibbs and Tatonya Huggins, on behalf of themselves and those similarly situated, filed a First Amended Nationwide Collective Action Complaint on September 14, 2018 against Defendants MLK Express Services, LLC, AG Plus Express, LLC, and Manihong M. Phanouvong, Lila V. Phanouvong, Amazon.com, Inc., Amazon Logistics, Inc., and Amazon.com Services, Inc.  (*Id.* at 1).[2]  Amazon is a digital retailer that sells products through its website, which it then ships to consumers throughout the United States.  (*Id.* at 2, 8).  Amazon contracts

---

[2]  A related collective action, *Burns v. MLK Exp. Servs., LLC et al.*, Case No. 2:18-cv-00625-UA-MRM, was initiated in this Court against Defendants MLK Express Services, LLC, and Amazon.com Services, Inc., on September 18, 2018.  (*See* Doc. 115).  No party has moved to consolidate these actions, (*see* Doc. 62 at 22), and on March 13, 2019, the MLK Defendants and AG Plus filed a Notice Regarding Other Pending Action on Behalf of the MLK Defendants and AG Plus notifying the Court "that a settlement in principal has been reached that, if approved, will resolve" related case 2:18-cv-00625-UA-MRM.  (Doc. 127).  Because no party has moved to consolidate the actions for any purpose, the Undersigned does not address that issue in this Report and Recommendation.

with delivery service providers ("DSPs"), such as AG Plus and MLK Express, to deliver products purchased on its website.  (*Id.* at 2).

MLK Express and AG Plus are "final mile" carriers and logistics companies that hire individuals who deliver Amazon packages.  (Doc. 40 at 4).  Plaintiffs allege that MLK Express and AG Plus "are related entities under common ownership and/or supervision of" the Phanouvong Defendants.  (Doc. 40 at 4).[3]

Plaintiff Gibbs states he was employed by Defendants as a local Amazon delivery driver from approximately September 13, 2017, through approximately February 1, 2018, while Plaintiff Huggins states she was employed by Defendants from approximately November 2017 through February 2018.  (Doc. 35 at 16-17).  They allege that they and the opt-in Plaintiffs "are among the thousands of current and former local delivery drivers—a/k/a Delivery Associates— who were directly and jointly employed by the Amazon Defendants, and various small logistics companies whom the Amazon Defendants contract with to provide local delivery services as part of Amazon's nationwide delivery channel."  (Doc. 40 at 5).

Plaintiffs allege four counts – all violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201-219 – and claim that Defendants failed to pay the minimum wage and/or overtime compensation.  (Doc. 35 at 22-25).  Plaintiffs assert that during the course of their employment, they and similarly situated employees, worked in excess of forty (40) hours per week and that

---

[3]  Although Plaintiffs refer to Defendants MLK Express Services, LLC, AG Plus Express, LLC, Manihong M. Phanouvong, and Lila V. Phanouvong collectively as the "MLK Defendants," (Doc. 40 at 4), Defendants maintain that Plaintiffs incorrectly commingle Defendant AG Plus Express, LLC with the MLK Defendants and that the Phanouvongs do not own or operate AG Plus Express, LLC.  (Doc. 62 at 1, 4; *see also* Docs. 93, 120).  For the sake of clarity, the Undersigned will refer to Defendants MLK Express Services, LLC, Manihong M. Phanouvong, and Lila V. Phanouvong as the "MLK Defendants" and to Defendant AG Plus Express, LLC as "AG Plus."

Defendants failed to pay them "the overtime premium of one and a half times their regular rate of pay" for all overtime worked and "[i]nstead, Defendants paid Plaintiffs and those similarly situated to them solely purported 'day rates,' based on the number of days they worked, and additional compensation per package delivered after a complete route, irrespective of the number of hours they worked each week."  (*Id.* at 17).  Their rate of pay varied from $100 to $150 per day depending on the day of the week they worked.  (*Id.*).  Additionally, Plaintiffs were paid $1.00 per package "when they delivered packages for other drivers after completing their route for the day."  (*Id.*).

Plaintiffs also allege that prior to their deliveries, Plaintiffs and those similarly situated to them were required to unload Amazon trucks on a daily basis but that Defendants did not pay Plaintiffs for the time spent unloading the trucks.  (*Id.*).  Plaintiffs state that this task typically took two or more hours to complete.  (*Id.*).  Named Plaintiffs Gibbs and Huggins claim that they worked between 42 and 65 hours and 45 and 65 hours per week, respectively.  (*Id.* at 17-18). In addition to the named Plaintiffs, sixteen individuals who worked for DSPs in five states, have opted in to this action.[4]  Both named Plaintiffs and opt-in Plaintiffs Baskin-Morse, Camacho, Gonzalez, Grosso, Huddleston, Phillips, Omar, Danielson, and Anderson submitted declarations in which they describe their employment.[5]

---

[4] The opt-in Plaintiffs are:  Della Baskin-Morse, (Doc. 7); Krystal Phillips, (Doc. 8); Carlos Gonzalez, (Doc. 15); Jeffrey Huddleston, (Doc. 16); Roberto Ricardo Fernandez Camacho, (Doc. 22); Biaggio Grosso, (Doc. 25); Antonio Carr, (Doc. 56); Marcel Fernando Vega Romero, (Doc. 58); Rickisha Anderson, (Doc. 75); Omar Omar, (Doc. 77); Vivek Danielson, (Doc. 81); Knigyl Barnes, (Doc. 98); Sarah Washington, (Doc. 100); Niran Shrestha, (Doc. 103); and Rogers Canadel Vazquez, (Doc. 109); Roberto Garcia, (Doc. 126).

[5] (Docs. 40-7, 40-8, 40-9, 40-10, 40-11, 40-12, 40-13, 40-14, 83-3, 83-4, 83-5).

**B.** **Conditional Certification and Notice**

Plaintiffs seek conditional certification of a collective action and request that the Court

permit court-supervised notification to all similarly situated individuals.  (Doc. 40 at 1-2).

Plaintiffs assert that they and putative class members are similarly situated in that they were

employed by Defendants as delivery drivers or driver associates ("DAs") who were subject to the

same illegal pay practices.  Thus, Plaintiffs seek to facilitate notice to the following proposed

class and sub-class:

> a.  All Amazon local delivery drivers or driver associates who were
> solely paid a purported "day rate" and who worked for any company
> that contracted with Amazon.com to provide local delivery services
> at any location within the United States, within the three year period
> [sic] preceding June 18, 2018 (the "Amazon Local Driver Class");
> and
>
> b.  All local delivery drivers or driver associates, paid by the MLK
> Defendants, and who were solely paid a purported "day rate" within
> the three year period [sic] preceding June 18, 2018 (the "MLK Sub-
> Class").

(*Id.*).

Plaintiffs also make numerous requests regarding the issuance of the proposed notices.

(Doc. 40 at 33-39).  First, they request that they be permitted to issue notice via email and text

message and that they be permitted to post the notice in each of Defendants' warehouses.  (*Id.* at

33-35).  They also request that putative class members be allowed to execute the consent forms

electronically via "Adobe Sign."  (*Id.* at 35-36).  Next, they request a ninety-day notice period

and permission to send a reminder notice halfway through the notice period.  (*Id.* at 36-37).

They further request that the notice include a three-year statute of limitations period that runs

from the date of the Court's ruling on this Motion.  (*Id.* at 38).[6]  Finally, they request that the

---

[6] The Undersigned notes that Plaintiffs' request regarding the three-year statute of limitations
period differs from the temporal scope of the proposed class definitions and from the temporal

Court order Defendants to provide a list containing all putative class members' names, addresses, phone numbers, the last four digits of their social security numbers, and email addresses so that they may carry out the notice.  (*Id.* at 39).

Defendants oppose the Motion on several grounds.  (Docs. 62, 65).  AG Plus and the MLK Defendants argue that the geographic scope of the MLK Sub-Class should be limited to the Fort Myers area.  (Doc. 62 at 4-7).  Amazon argues that Plaintiffs' Motion should be denied because Plaintiffs fail to show that they and putative class members are similarly situated, because Plaintiffs fail to show Amazon implemented a common, unlawful pay practice of jointly employed drivers, and because the Court would lack personal jurisdiction over Amazon on claims by out-of-state class members.  (Doc. 65 at 15-29).  Moreover, all Defendants take issue with numerous aspects of Plaintiffs' proposed manner, method, timing, and content of the proposed notices and consent form.  (Doc. 62 at 7-23; Doc. 65 at 33-43).

Upon consideration and for the reasons outlined below, the Undersigned recommends that the Motion (Doc. 40) be **GRANTED IN PART and DENIED IN PART**.

## II.   Analysis

### A.   Conditional Certification Standard

The FLSA authorizes the use of collective actions against employers accused of violating the FLSA.  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008).  The

---

scope of the proposed notices.  Plaintiffs state in the Motion that "notice should go to all individuals who were employed by Defendants during the three-year period preceding the Court's ruling on the instant motion."  (Doc. 40 at 38).  The proposed class definitions contain a temporal scope of the "three year [sic] period preceding June 18, 2018."  (*Id.* at 1-2).  Finally, the proposed notices state:  "***IF YOU ARE OR WERE AT, ANY TIME BETWEEN JUNE 18, 2015 AND THE PRESENT, AN AMAZON LOCAL DELIVERY DRIVER*** . . . ."  (Docs. 40-1, 40-2).  As discussed in more detail below, the Undersigned concludes that the relevant time period is the three-year period preceding the issuance of notice.

purposes of the collective action are twofold:  (1) to reduce the burden on plaintiffs by pooling their resources; and (2) to efficiently resolve common issues of fact and law that arise from the same illegal conduct.  *Id.* at 1264.  Basically, a collective action allows the efficient resolution of a large number of plaintiffs' claims at one time.  *Id.*

An FLSA action may be maintained as follows:

> against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  "Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated."  *Morgan*, 551 F.3d at 1258 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)).  Further, to participate in a collective action, each individual must affirmatively opt in to the suit.  *Id.* (citing *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1017 (11th Cir. 2007)).

The Eleventh Circuit has adopted a two-tiered approach to determine whether a collective action should be certified under § 216(b).  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).  While not required, the approach is encouraged.  *Id.* at 1219 ("The decision to create an opt-in class under § 216(b) . . . remains soundly within the discretion of the district court.").  This approach consists of the following:

> The first determination is made at the so-called "notice stage."  At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.  If the district court

"conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery. The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims.

*Id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1211 (5th Cir. 1995)).

At this point in the litigation, the Court must decide whether notice should be given to potential class members. Prior to granting conditional certification, a court "should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). To establish that plaintiffs are similarly situated, opt-in plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members. *Hipp*, 252 F.3d at 1217 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

The Undersigned first turns to the proposed MLK Sub-Class and then examines the proposed Amazon Local Driver Class.

### B.    The MLK Sub-Class

AG Plus and the MLK Defendants do not oppose conditional certification of the Sub-Class entirely. Rather, they urge the Court to limit the Sub-Class to those employees who work or worked at the same facility located in Fort Myers, Florida. (Doc. 62 at 4-5). In support, AG Plus and the MLK Defendants assert that Plaintiffs have only offered declarations from

employees who worked at the Fort Myers location and who "do not attest to the duties of any other employees working anywhere else." (*Id.* at 6). They therefore request that the "Court modify the notice and limit its scope to putative collective action members who had those same job classifications, were paid a day rate, and worked out of Fort Myers." (*Id.* at 7).

Plaintiffs argue that notice should issue to all similarly situated drivers regardless of the location at which they worked. (Doc. 85 at 1-2). They note that AG Plus and the MLK Defendants do not deny having locations in Fort Myers, Sarasota, Cape Coral, and/or Orlando and that several of the declarations filed in support state that MLK Express handles Amazon deliveries in those geographic regions. (*Id.* at 1-2). Thus, they argue, "[o]n these facts, where other locations exist, Plaintiffs' declarations from one of the locations is sufficient to allow notice to issue to all Delivery Associates employed by the Defendants at all locations, especially where the potential opt-ins have the same or similar job duties (drive and deliver Amazon packages) and were subjected to the same pay (day rate with improper overtime)." (*Id.* at 3-4).

The Undersigned concludes that Plaintiffs have failed to show that DAs at MLK Express's other locations are interested in joining this action. Although some of the declarations reference the fact that MLK "handles" Amazon's deliveries in Fort Myers, Cape Coral, Sarasota, and Orlando,[7] none of the declarants attest to observations or knowledge of drivers' duties outside the Fort Myers location.[8] Thus, the evidence submitted by Plaintiffs is sufficient to conditionally certify a class limited to MLK drivers that work in Fort Myers. Courts within this district have similarly limited a proposed class to only the locations for which a plaintiff has presented evidence. *See, e.g.*, *Reese v. Fla. Bc Holdings, LLC*, No. 6:17-CV-1574-ORL-41-

---

[7] (Docs. 40-7, 40-9, 40-12, 40-13).

[8] (*See generally* Docs. 40-7, 40-8 40-9, 40-12, 40-13, 40-14).

GJK, 2018 WL 1863833, at *3 (M.D. Fla. Mar. 16, 2018), *report and recommendation adopted*,

No. 6:17-CV-1574-ORL-41-GJK, 2018 WL 2011334 (M.D. Fla. Apr. 30, 2018) (recommending

that the geographic scope of a proposed class be limited to the locations for which plaintiffs

provided evidence of other employees who wished to opt in); *Campbell v. Pincher's Beach Bar*

*Grill Inc.*, No. 2:15-CV-695-FTM-99-MRM, 2016 WL 3626219, at *5 (M.D. Fla. July 7, 2016)

(finding existence of two opt-in plaintiffs in addition to named plaintiff was sufficient to

conditionally certify as to one restaurant location but insufficient to warrant sending notice to all

of defendant's restaurant locations); *Gonzalez v. TZ Ins. Sols., LLC*, No. 8:13-cv-2098-T-33EAJ,

2014 WL 1248154, at *2 (M.D. Fla. Mar. 26, 2014) (finding that existence of five opt-in

plaintiffs was sufficient to convince the court that others desire to join the nationwide collective

action but limiting scope to Florida locations); *Robbins-Pagel v. Puckett*, No. 6:05-CV-1582-

ORL-31-DAB, 2006 WL 3393706, at *3 (M.D. Fla. Nov. 22, 2006) ("Plaintiff has presented no

indication that employees outside of Volusia County are similarly situated or would desire to join

the suit, and therefore the notice must be geographically limited.  Therefore, the Court will

authorize notice to current and former employees of WMF, working in Volusia County, whose

duties were not primarily agricultural and who worked more than 40 hours/workweek within the

last three years but were not paid over-time pay as required by FLSA.").  Thus, the Undersigned

recommends limiting the MLK Sub-Class to the Fort Myers facility.

    **C.**    **The Nationwide Class**

    Amazon urges the Court to deny the request for conditional certification with respect to

Amazon, arguing that Plaintiffs are not similarly situated to other DAs, that Plaintiffs have failed

to establish that Amazon implemented a common, unlawful pay practice or jointly employed

DAs, that individual inquiries preclude conditional certification, and that the Court would lack

personal jurisdiction over Amazon on claims by out-of-state DAs if the nationwide class is certified.  (Doc. 65 at 17-29).

Despite the parties' numerous filings and arguments related to conditional certification of the proposed nationwide class, the analysis boils down to whether Plaintiffs have shown that there are employees nationwide who:  (1) want to opt in to this action; and (2) are similarly situated as to the job duties and pay provisions.  *Dybach*, 942 F.2d at 1567-68.  For the reasons explained below, the Undersigned concludes that Plaintiffs have not met their burden to warrant conditional certification of a nationwide class.

### 1.    Other Employees Who Desire to Opt In

Plaintiffs and Amazon focus their arguments on whether Plaintiffs have established that they and putative class members are similarly situated.  Before examining that issue, however, the Undersigned turns to whether Plaintiffs have shown a reasonable basis that other employees nationwide desire to join.

"Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated [sic] employees."  *Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-CV770-T-27MSS, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006) (citing *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004)).  "[T]here is no magic number requirement" a plaintiff must meet to prove that other putative class members will join or wish to join the action.  *Palma v. Metropcs Wireless, Inc.*, No. 8:13-CV-698, 2013 WL 6597079, at *3 (M.D. Fla. Jan. 22, 2014) (concluding nine opt-in notices from employees in three states was sufficient to conditionally certify a nationwide class); *see also Campbell*, 2016 WL 3626219, at *5; *Ciani v. Talk of The Town Rests., Inc.*, No. 8:14-cv-2197-T-33AEP, 2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015) (finding existence of two opt-in plaintiffs, who also filed declarations describing duties,

was sufficient to show others desired to join); *Nadreau v. Lush Cosmetics, LLC*, No. 2:10-CV-298-FTM-36SPC, 2011 WL 13143146, at *2 (M.D. Fla. Jan. 8, 2011) (finding plaintiffs established reasonable basis that other employees wished to join suit because plaintiffs filed nine notices and declarations from employees across the nation).

As noted above, in addition to the named Plaintiffs, sixteen individuals have opted in to this action.  Of the eighteen total Plaintiffs, eleven fall outside the MLK Sub-class.  Of these, five are from Florida, (Docs. 15, 25, 75, 109, 126), one from Wisconsin, (Doc. 56), one from California, (Doc. 100), one from Georgia, (Doc. 98), and three from Minnesota, (Docs. 77, 81, 103).

Plaintiffs have submitted five declarations from DAs who fall outside the MLK Sub-Class.  Three of the five Florida opt-in Plaintiffs have submitted declarations:  Carlos Gonzalez (Doc. 40-10); Baggio Grosso (Doc. 40-11); and Rickisha Anderson (Doc. 83-5).  Both Gonzalez and Grosso work as DAs for Fusion Logistics in Orlando.  (Doc. 40-10 at 3; 40-11 at 3).  Anderson worked as a DA for JSTC, LLC, in Jacksonville.  (Doc. 83-5 at 2-3).  Two opt-in Plaintiffs from Minnesota have submitted declarations:  Omar Omar (Doc. 83-3); and Vivek Danielson (Doc. 83-4).  Omar avers that he currently works as a DA in the Minneapolis area for Nationwide Express, LLC, and previously worked for Trinity Couriers, Inc., from 2016 to 2018. (Doc. 83-3 at 2-3).  Danielson avers that he previously worked as a DA for Nationwide Express, LLC, in Minneapolis.  (Doc. 83-4 at 1).

The Undersigned turns first to the Minnesota opt-in Plaintiffs' declarations and preliminarily notes that Omar is a named plaintiff in a collective action filed in the United States District Court of Minnesota.  *See Warfa v. Nationwide Exp., LLC*, No. 18-03103 (D. Minn. filed 11/5/18).  He and Abdullahi Warfa filed a collective action for unpaid overtime compensation

relating to violations of the FLSA and the Minnesota Fair Labor Standards Act.  (*See* Doc. 90-1 at1).  Amazon argues that Omar cannot pursue the same claims in two different lawsuits.  (Doc. 91 at 3).  Rather, Amazon argues that Minnesota is the proper forum for the Minnesota opt-in Plaintiffs' claims and that Omar's claims should be dismissed under the first-filed doctrine. (*Id.*).  Plaintiffs counter that Amazon ignores the fact that Omar also worked for Trinity Couriers from 2016 to 2018 and that he "is pursuing entirely different claims in this case Amazon, [sic] than he is in the Nationwide Express case and the existence of the Nationwide Express matter is irrelevant to the issues at bar."  (Doc. 99 at 5 (citing Doc. 83-3, Omar Decl. at ¶¶ 3, 6)).[9]

Assuming, at this point, that the Minnesota opt-in Plaintiffs are proper parties in this action, opt-in Plaintiff Omar avers in his declaration, as is relevant to other employees' desire to opt in:  "[B]ased on conversations I had with other local delivery drivers of Trinity, Nationwide and other contractors at the warehouse where I worked, I believe that other delivery drivers, including but not limited to Osman Warfa, will join this lawsuit to recover their unpaid overtime

---

[9]  Under the first-filed doctrine, "when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case."  *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 78 (11th Cir. 2013).  Thus, the Eleventh Circuit has held that "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."  *Id.*  This action was initiated on June 18, 2018.  (Doc. 1).  The Minnesota action was initiated November 5, 2018, (*see generally* Doc. 91-1), and opt-in Plaintiff Omar joined this action on November 8, 2018, (Doc. 77).  Although Plaintiffs argue that the existence of the Minnesota action is "irrelevant to the issues at bar," the Minnesota action involves at least one of the named defendants in this action, Amazon Logistics, Inc., and involves at least one of the same claims, *i.e.*, violations of the FLSA for failure to pay the plaintiffs one and a half times their regular rate of pay for all time worked in excess of forty (40) hours in a work week.  (*Compare* Doc. 35 at 1, 22, *with* Doc. 91-1 at 4, 11).  The Undersigned further notes that Minnesota opt-in Plaintiff Danielson also works for Nationwide Express, one of the named defendants in the Minnesota action.  (Doc. 83-4 at 2).  The parties have not submitted full briefing on this issue and, therefore, the Undersigned cannot make a determination at this time as to whether Omar and Danielson are proper opt-in Plaintiffs in this action.

if they were to receive court-approved notice." (Doc. 83-3 at 9).  Opt-in Plaintiff Danielson

avers: "[B]ased on conversations I had with other local delivery drivers at the warehouse where

I worked, I believe that other delivery drivers will join this lawsuit to recover their unpaid

overtime if they were to receive notice." (Doc. 83-4 at 6).

As to the Florida opt-in Plaintiffs who fall outside the MLK Sub-Class and who have

submitted declarations, both opt-in Plaintiffs Gonzalez and Grosso state they work for Amazon

through Fusion Logistics and that "[i]n [their] conversations with other local delivery drivers

both during [their] employment and after, many indicated that they would likely join a lawsuit to

recover their unpaid overtime if they were to receive court-approved notice." (Doc. 40-10 at 6;

Doc. 40-11 at 7).  Opt-in Plaintiff Anderson states that she works for Amazon through JSTC,

LLC, and that "based on conversations [she has] had with other local delivery drivers, [she]

believe[s] that other delivery drivers, including but not limited to Bridget Weathersby, will join

this lawsuit to recover their unpaid overtime if they were to receive court-approved notice."

(Doc. 83-5 at 6).

The Undersigned concludes that Plaintiffs have shown a reasonable basis that other DAs

desire to opt in to this action.  As noted above, there is no magical number of potential opt-in

plaintiffs that a plaintiff must provide, and Plaintiffs have submitted evidence that DAs in at least

five states desire to join.  *See, e.g.*, *Palma*, 2014 WL 235478, at *3.  Thus, the Undersigned

recommends that this Court find that Plaintiffs have met their burden to show that employees

exist who desire to opt in.

## 2.    Similarly Situated

Nonetheless, the Undersigned concludes that Plaintiffs have failed to meet their burden to

show a "reasonable basis" for their "claim that there are other similarly situated employees."

*Morgan*, 551 F.3d at 1260.  This burden is not a heavy one, but Plaintiffs must offer more than

"unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would" join.  *Id.* at 1261.

Plaintiffs proffer eleven declarations of named and opt-in Plaintiffs, in which they describe their job duties and pay arrangements.  While the declarations differ somewhat, they largely share common core allegations.  To illustrate, Plaintiff Gibbs' declaration states:

> I am a former employee of MLK Express Services, LLC ("MLK"), Amazon.com, Inc., ("ACI"),  Amazon Logistics, Inc., ("ALI"), and Amazon.com Services ("ACS") (ACI, ALI, and ACS are hereinafter collectively referred to as "Amazon.com," and all Defendants, including MLK, are hereinafter collectively referred to as "Amazon.").
>
> . . . .
>
> As a local delivery driver, my primary duty was to deliver Amazon packages to Amazon's customers in the greater Fort Myers area.
>
> Throughout my employment I regularly observed Amazon's other Fort Myers local delivery drivers performing their duties on a day to day basis.
>
> Thus, I have personal knowledge that delivery drivers have the same primary duties.
>
> . . . .
>
> The entire delivery process, from start to finish, was controlled by Amazon.com.
>
> Throughout my employment I typically worked between five (5) and seven (7) days a week.
>
> . . . .
>
> Each morning, I was required to report to a warehouse where Amazon.com merchandise was delivered.
>
> Some days I was required to unload the Amazon.com delivery packages from the Amazon.com truck prior to the start of my daily route despite the fact that these duties were not part of my job description.

I never received additional compensation for unloading the trucks prior to the start of my daily route.

When I arrived at the warehouse each morning, I was required to sign a sign in sheet.

However, the sign-in sheet only reflected our daily attendance, and Amazon failed to keep track of our hours worked.

. . . .

All Amazon delivery drivers, including me, were required to meet specific productivity goals and were required deliver a certain number of packages per hour.

If a delivery driver did not meet his/her delivery quotas, Amazon.com would instruct MLK to terminate the driver.

I am aware of several delivery drivers who were terminated for this reason.

. . . .

For regular weekday routes, I was paid at a rate of $100.00 per day. For weekend routes, I was paid $150.00 per day. However, on some weekdays, if there had been a mistake with the "manifest" I was given, such that I was required to deliver additional packages I was paid $125.00 for that day.

In addition to my route pay, I also occasionally received "rescue pay" if I was required to assist another delivery driver with his/her route. To the extent I "rescued" a package and delivered a package that was on another driver's manifest, I received $1.00 or $2.00 for each additional package that I delivered.

Throughout the duration of my employment with Amazon, I regularly worked over forty (40) hours per week.

However, I was not compensated any overtime premium for any hours that I worked over forty (40) each week.

. . . .

I am aware that other delivery drivers similarly complained about Amazon's failure to pay proper overtime compensation . . . .

> On average, I worked between 50 and 60 hours per week.  However, I often worked more than 60 hours per week.
>
> My work hours, and the extensive overtime hours worked were typical of all of Amazon's drivers in my experience.
>
> Notwithstanding our excessive overtime hours, Amazon's other drivers and I were not compensated at a time and one-half rate for all of the hours that I worked over forty (40) each week due to the Amazon's illegal payment policy whereby it does not pay overtime to its local delivery drivers.

(Doc. 40-9 at 2-8).  Some declarations state that "Amazon" advised the DA that he or she would be paid overtime, (*see, e.g.*, Doc. 40-9 ¶ 15), while other declarations are vague as to who made this alleged representation to the DA, (*see e.g.*, Doc. 40-8 ¶ 12), while still others make no mention of this alleged representation, (*see, e.g.*, Doc. 40-7).

Moreover, Plaintiffs have filed Amazon's DA job description for postings in Florida and Virginia.  Amazon's posting describes DA duties as follows:

- Assist in the coordination of Delivery Associate (DA) training and ride alongs [sic] for new DAs
- Ensure vehicle cleanliness and appearance is maintained to standard and captured via DA inspections
- Ensure adherence to dress code standards
- Conduct regular ridealongs with DAs for engagement and standard work adherence
- Daily review of DA performance to identify potential ridealong candidates
- At times assisting with production duties, training sort associates and verifying SOP compliance
- Ensure successful area performance, through tracking and reporting metrics
- Understand workflow and daily production goals
- Review and update SOP as required
- Ensure work areas remain clean and are equipped with proper equipment and supplies
- Identify and address safety hazards within the work area
- Coach associates to work safely at all times and participate in safety initiatives
- Ensure all job injuries are reported timely in accordance with established policy and procedure

- Provide direction utilizing independent judgment
- Continue meeting or exceeding of department performance goals

(Doc. 40-30 at 2-4).  Plaintiffs have also submitted various DSPs' job descriptions for postings throughout the United States.  (*See generally* Docs. 40-31, 83-1).  These job postings generally describe a DA's responsibilities, *i.e.*, delivering packages for Amazon, and describe a DA's pay rate potential.  (*Id.*).

Plaintiffs also rely on (1) declarations of drivers that were originally filed in other actions and (2) the existence of other actions to show that conditional certification of a nationwide class is warranted.  (*See* Doc. 40 at 17-18 (relying on "the declarations of 10 non-party witnesses who worked for Amazon through contractors other than the MLK Defendants, in Pennsylvania, Maryland, and Michigan" and "the multitude of similar cases filed against Amazon and its various DSPs throughout the country" in support of their claim that Amazon violated the FLSA)).

Upon consideration, the Undersigned finds that conditional certification of a nationwide class is inappropriate under the circumstances.  As a preliminary matter, the Undersigned declines to rely on either the declarations of employees that were filed in other actions or on the existence of other litigation because none of them demonstrate that there are similarly situated putative class members nationwide that seek to join *this action.  See, e.g.*, *Rojas v. Uber Techs., Inc.*, No. 16-cv-23670-civ-Scola, 2017 WL 2790543, at *2-3 (M.D. Fla. June 27, 2017) ("None of the documents that Rojas has provided from cases pending before other district courts concern the specific job requirements and pay provisions *of potential opt-in plaintiffs in this litigation*." (emphasis added)).

Plaintiffs allege that the proffered evidence supports their argument that putative class members are similarly situated individuals who were employed by their individual DSP and by Amazon as DAs within the past three years, who were paid a flat day rate, and who were not properly compensated for overtime hours worked.  (Doc. 40 at 20).  As a result of this common pay practice, Plaintiffs and putative class members were allegedly deprived their overtime and minimum wages.  (*Id.* at 19).

Amazon urges the Court to deny conditional certification, arguing that Plaintiffs are unable to show that Amazon implemented a common, unlawful pay practice.  (Doc. 65 at 10). While evidence of a unified scheme, policy, practice, or plan is not required to show that potential class members are similarly situated, "the existence of such policy or plan is relevant to the Court's exercise of discretion in granting conditional certification in order to satisfy the rationale of a collective action, which is to preserve judicial economy." *Rosales v. El Michoacana LLC*, No. 2:15-CV-711-FTM-38CM, 2016 WL 7093432, at *3 (M.D. Fla. Oct. 20, 2016), *report and recommendation adopted*, No. 2:15-CV-711-FTM-38CM, 2016 WL 7034403 (M.D. Fla. Dec. 2, 2016); *see also Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-00470-T-27, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) ("The key consideration is that to be 'similarly situated,' there must be 'substantial allegations that potential members were together the victims of a single decision, policy, or plan.'" (quoting *Richardson v. Wells Fargo Bank, N.A.*, Civil Case No. 4:11-CV-00738, 2012 WL 334038, at *2 (S.D. Tex. Feb.2, 2021))); *Lewis-Gursky v. Citigroup, Inc.*, No. 8:15-CV-2887-T-24MAP, 2017 WL 892604, at *5 (M.D. Fla. Mar. 6, 2017) ("[A] 'key consideration is that to be similarly situated, there must be substantial allegations that potential members were together the victims of a single decision, policy, or plan' that violates the FLSA." (quoting *Hart*, 2012 WL 6196035, at *5)).

While Plaintiffs have established that DAs share similar duties and that many are paid a day rate, this case is complicated by the fact that Amazon contracts with individual DSPs nationwide who in turn hire DAs. The only basis Plaintiffs have submitted that Amazon had a common pay policy or practice of failing to properly pay overtime or minimum wage to potential class members on a nationwide basis are the declarations from Minnesota DAs Danielson and Omar, and Florida DAs Gonzalez, Grosso, and Anderson. (Docs. 40-10, 40-11, 83-3, 83-4, 83-5). While these *may* be sufficient to show that those opt-in Plaintiffs in those locations were similarly situated, there is no evidence that the California, Georgia, and Wisconsin opt-in Plaintiffs who fall outside of the MLK Sub-Class are similarly situated. Indeed, the only indication that they are is the identical and conclusory statement contained in each consent-to-join form that they are similarly situated. (Docs. 56, 98, 100, 103, 126).[10]

Moreover, the Undersigned is not persuaded that the declarations even establish that those opt-in Plaintiffs are victims of a common Amazon policy violative of the FLSA. First, all of the declarations refer to the Amazon Defendants and the individual DSP as "Amazon," (*see, e.g.*, [Doc. 40-10 at 1](); [Doc. 40-11 at 1](); [Doc. 83-3 at 2](); [Doc. 83-4 at 2](); [Doc. 83-5 at 3]()). Thus, when a declaration contains a statement regarding "Amazon," it is impossible to tell which entity or entities are being referred to. Second, while it is not apparent from the declarations who is responsible for paying the DAs, Plaintiffs allege in the Motion *sub judice* that MLK and AG Plus pay the DAs. ([Doc. 40 at 4]()). Thus where declarations vaguely state, for example, that "[n]otwithstanding our excessive overtime hours, Amazon's other drivers and I were not compensated at a time and one-half for all of the hours that we work over forty (40) each week

---

[10] All of the consent-to-join forms state: "I am similarly situated to the named Plaintiff in this matter because I performed similar duties for the Defendant and was paid in the same regard as the named Plaintiff." (*See* Docs. 56, 98, 100, 103, 126).

due to Amazon's illegal payment policy whereby it does not pay proper overtime compensation to its local delivery drivers," it cannot be determined which entity is alleged to be responsible for this conduct.  (*See, e.g.*, Doc. 40-10 at 6; *see also* Doc. 40-11 at 7; Doc. 83-3 at 8; Doc. 83-4 at 5; Doc. 83-5 at 6).  Similarly, Plaintiffs make equally vague assertions throughout the subject Motion that "*Defendants*" paid a day rate and failed to properly compensate DAs.  (*See, e.g.*, Doc. 40 at 5-6, 15, 20, 26 (emphasis added)).  Vague and conclusory allegations are insufficient to show that conditional certification is appropriate.  "Indeed, federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where, as here, the plaintiffs attempt to certify a broad class based only [on] the conclusory allegations of few employees."  *Rappaport v. Embarq Mgmt. Co.*, No. 6:07-CV-468-ORL-19DAB, 2007 WL 4482581, *4 (M.D. Fla. Dec. 18, 2007).

The Undersigned agrees with Amazon that "[t]hese vague assertions purportedly about Amazon are belied by Plaintiffs' specific allegations about DSPs" in the Motion *sub judice*, (*see* Doc. 65 at 21 ("MLK and AG Plus 'recruit' and 'pay' DAs and 'determine the days' on which DAs work" (quoting Doc. 40 at 4))), and by the declarants' specific allegations about DSPs and specific Amazon entities in the declarations.  (*Compare* Doc. 40-10 at 3 ("I was interviewed by JC . . . , a Fusion manager.  JC advised me that I would be paid $135.00 per day, and that my day rate was intended to cover a delivery route that would take eight (8) hours."), Doc. 40-10 at 5 ("Amazon.com tracks all delivery drivers' performance, including mine using information we are required to input into the rabbit or the Amazon Flex application."), *with* Doc. 40-10 at 6 ("Notwithstanding our excessive overtime hours, Amazon's other drivers and I were not compensated at a time and one-half for the hours that we work over forty (40) each week due to

Amazon's illegal payment policy whereby it does not pay proper overtime compensation to its local delivery drivers.")).

At bottom, the Undersigned finds that five declarations that include vague references to Amazon and alleged FLSA violations are insufficient to warrant nationwide conditional certification in this case.  *See, e.g.*, *Kelley v. Taxprep1, Inc.*, No. 5:13-CV-451-OC-22PRL, 2014 WL 10248251, at *2 (M.D. Fla. Apr. 2, 2014) ("These four affidavits, which are mostly identical, of Defendant's former or current employees consist of completely conclusory assertions that the Court finds are not probative of the similarly situated question.  Further, Plaintiffs identify only twelve individuals who have either joined, or may be interested in joining this lawsuit.").  Although the declarations submitted in this action are not identical, as they were in *Kelley v. Taxprep1, Inc.*, No. 5:13-CV-451-OC-22PRL, 2014 WL 10248251, at *2 (M.D. Fla. Apr. 2, 2014), as noted above, the paragraphs related to "Amazon's" purported common, unlawful pay practice are similarly conclusory and not probative of the similarly situated question.  (*See, e.g.*, Doc. 40-10 at 6; *see also* Doc. 40-11 at 7; Doc. 83-3 at 8; Doc. 83-4 at 5; Doc. 83-5 at 6).

Additionally, the Undersigned agrees with Amazon that several individualized inquiries required in this action militate against conditional certification.  While the Undersigned is cognizant that examination of individualized inquiries is generally reserved for the second stage of a collective-action proceeding, courts are not bound by the two-tiered approach.  *Carruthers v. Keiser School, Inc.*, No. 8:09-CV-2541-T-33TGW, 2010 WL 5055876, at *1 (M.D. Fla. Dec. 3, 2010) (citing *Hipp*, 252 F.3d at 1219)).  Courts, including judges within this district, have declined to conditionally certify a collective action on this basis.  *See, e.g.*, *Chalker v. Burlington Coat Factory of Fla., LLC*, No. 8:12-CV-2755-T-23, 2013 WL 5954783, at *3 (M.D. Fla. Nov.

7, 2013) (finding that several plaintiff-specific inquiries that would be required precluded conditional certification); *Hart*, 2012 WL 6196035, at *5 (declining to conditionally certify nationwide collective action because "plaintiff-specific inquiries would be required as to numerous issues including, *inter alia,* whether plaintiffs actually worked 'off the clock,' whether plaintiffs modified their time records to reflect the actual time worked, whether plaintiffs' supervisors were aware of any 'off-the-clock' work, whether plaintiffs agreed to mandatory arbitration, and whether any 'off-the-clock' work fell within the *de minimis* exception to the FLSA" (footnote omitted)).

Individualized inquiries would need to be made regarding issues such as:  (1) whether putative class members are parties to an enforceable arbitration agreement, (*see* Doc. 40-10 at 7; Doc. 40-11 at 7); (2) whether employees worked overtime at the instruction of individual DSP or warehouse managers, rather than at the direction of Amazon's company-wide policy; and (3) whether Amazon or the individual DSP paid employees.  Moreover, Plaintiffs' own proffered evidence indicates that some DAs were paid other than a flat day rate.  (*See, e.g.*, Doc. 40-31 at 11, 17, 20, 26, 36, 85).  And while Plaintiffs seek to send notice only to DAs paid a flat day rate, an inquiry would have to be made into each DSP Amazon contracts with and whether DAs were paid a flat day rate, an hourly rate, or in some other manner.[11]  The proposed nationwide class includes "thousands" of DAs who were employed by an unknown number of DSPs that contracted with Amazon to provide delivery services.  The Undersigned finds that conditional certification under these circumstances may prove unmanageable and would cut against the purpose of collective actions—*i.e.*, judicial economy.

---

[11]  In fact, in numerous job postings filed by Plaintiff, it is not clear how DAs are paid.  For example, some postings state that DAs are paid a day rate, while also stating DAs are paid an hourly rate.  (*See, e.g.*, Doc. 40-31 at 11, 17, 20, 26, 36, 85).

For example, a major issue that will need to be resolved is whether Amazon was a joint employer. This determination requires examination of the following factors:

> (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities.

*Lewis-Gursky*, 2017 WL 892604, at *5 (citing *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir. 2012)). "Importantly, whether a joint-employment relationship exists is a fact-specific inquiry that must be undertaken on a case-by-case basis." *Id.* (citing *Crossley v. Armstrong Homes, Inc.*, No. 5:14–cv–636–Oc–30PRL, 2015 WL 2238347, at *2 (M.D. Fla. May 12, 2015)).

In *Lewis-Gursky v. Citigroup, Inc.*, No. 8:15-CV-2887-T-24MAP, 2017 WL 892604, at *5 (M.D. Fla. Mar. 6, 2017), this Court declined to conditionally certify a nationwide collective action. In that case, the named plaintiffs brought a nationwide collective action against Citigroup, Inc., and Judge Technical Services, Inc. *Id.* at *1. The plaintiffs alleged that Citi and Judge Technical failed to pay overtime compensation to hourly paid IT employees. *Id.* "The proposed collective [sic] include[d] a diverse group of [employees] from over 40 vendors with different job titles and different job duties, who worked for multiple Citi affiliates at over 60 different Citi locations nationwide." *Id.* at *5. The court ultimately determined that conditional certification of a nationwide class was inappropriate because of the individualized inquiries that would be required. *Id.*

Among those inquiries included the "crucial issue" of whether Citi was the plaintiffs' joint employer. *Id.* In considering the issue, the court wrote:

24

> Plaintiffs argue that because they plausibly allege that the [employees] within the proposed collective are jointly employed by Citi, regardless of the staffing agency, collective notice is appropriate. However, aside from making conclusory allegations, Plaintiffs have not shown that the members of the proposed collective are similar in the application of the joint-employment factors. While mindful that courts generally reserve consideration of the joint employment factors until the final, stage-two determination, *see, e.g.*, *Nadreau v. Lush Cosmetics, LLC*, No: 2:10–CV–298–FtM–36SPC, 2011 WL 13143146, at *3 (M.D. Fla. Jan. 28, 2011), in this case the Court concludes that material differences between the members of the proposed collective would lead to unmanageable individualized inquiries regarding joint employment if a collective were to be certified.

*Id.* at *6. Thus, the court concluded that "the application of the joint-employment factors to the proposed collective would result in unwieldy, plaintiff-specific inquiries that would run counter to the principles of judicial economy upon which collective certification is based." *Id.*

The Undersigned acknowledges that in *Lewis-Gursky*, the parties engaged in six months of discovery prior to the filing of the motion for conditional certification, and the court therefore applied a more rigorous standard than that normally applied at the first stage of certification. *Id.* at *4. Nonetheless, the same concern regarding individualized inquiries as to joint employment applies here. Plaintiffs allege Amazon is a joint employer, and they highlight numerous ways in which they contend that Amazon held control over DAs and the Plaintiffs' duties. (*See* Doc. 40 at 6-14). Amazon disputes that it is a joint employer. (*See* Doc. 65 at 18-21). However, none of the parties dispute that Amazon contracts with DSPs nationwide who in turn hire DAs. As noted by Amazon, "[t]he joint employment factors would have to be analyzed anew for the employees of every DSP in the country," which would require examination of "each class member or at least each DSP one by one." (Doc. 65 at 23).

While it is "premature" to determine whether Amazon is a joint employer of Plaintiffs and putative class members, it is nonetheless "appropriate to consider whether [the joint-

employment analysis] can be easily applied on a class-wide basis, or whether Plaintiffs are so differently situated that applying the [analysis] would require an 'individualized assessment' which 'eviscerates all notions of judicial economy that would otherwise be served by conditional class certification.'" *Herrera v. Mattress Firm, Inc.*, No. 17-22048-CIV-ALTONAGA/Goodman, 2017 WL 4270619, at *6-7 (S.D. Fla. Sept. 26, 2017) (disagreeing with plaintiffs' argument that consideration of whether putative class members were employees or independent contractors could only be done after "significant discovery" occurred and concluding that while a merits-based determination of whether putative class members were employees or independent contractors was not appropriate at the first stage, the court was not precluded from considering whether this determination would require individualized inquiries and therefore preclude conditional certification).  As noted in *Herrera v. Mattress Firm, Inc.*, No. 17-22048-CIV-ALTONAGA/Goodman, 2017 WL 4270619, at *6-7 (S.D. Fla. Sept. 26, 2017), "[o]ne of the main purposes for examining whether [a joint-employment analysis] will require an individualized inquiry or can be applied across the class is to prevent [h]ighly [i]ndividualized, [f]act-[i]ntensive [d]iscovery." *Id.* at *7 (alterations in original) (quoting *Pena v. Handy Wash, Inc.*, No. 14-20352-CIV, 2014 WL 12531537, at *8 (S.D. Fla. July 3, 2014)).  Thus, "[j]udicial economy would not be well served in requiring significant discovery before the Court examines whether individualized, fact-intensive discovery can be avoided." *Id.*  Upon consideration, the Undersigned concludes that under the circumstances of this case, "the application of the joint-employment factors would result in unwieldy, plaintiff-specific inquiries that would run counter

to the principles of judicial economy upon which collective certification is based." *Lewis-Gursky*, 2017 WL 892604, at *6.[12]

In sum, the Undersigned finds that while Plaintiffs have shown that DAs shared similar duties and that many were paid a flat day rate, Plaintiffs have made only vague allegations regarding "Amazon's" common illegal payment scheme.  Moreover, even if their allegations could be viewed as sufficient, conditional certification of a nationwide class in this case is inappropriate because the individual inquiries required "would 'eviscerate[ ] all notions of judicial economy that would otherwise be served by conditional class certification.'" *Lewis-Gursky*, 2017 WL 892604, at *5 (alteration in original) (quoting *Demauro v. Limo, Inc.*, No. 8:10-CV-413 -T-33AEP, 2011 WL 9191, at *4 (M.D. Fla. Jan. 3, 2011)).  The Undersigned thus recommends that the Court deny Plaintiffs' request for conditional certification of the Amazon Local Driver Class.

---

[12]  The Undersigned notes that United States District Judge Charlene Edwards Honeywell recently granted conditional certification of a nationwide class in *Thomas v. Waste Pro USA, Inc.*, No. 8:17-CV-2254-T-36CPT, 2019 WL 1141573, at *1 (M.D. Fla. Mar. 12, 2019).  In doing so, Judge Honeywell declined to address the issue of joint employment at the conditional certification stage, relying on this Court's decision in *Nadreau*, in which the Court acknowledged that "[i]n instances where a motion for conditional certification involved a potential class of employees that worked for separate but related employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination."  *Thomas*, 2019 WL 1141573, at *11 (quoting *Nadreau*, 2011 WL 13143146, at *3).  For the reasons stated above and below, however, the Undersigned concludes that the joint-employment issue should preclude conditional certification of a nationwide class here.  While individualized inquiries, including the joint-employment analysis, are generally considered at stage two, the Court need not apply the two-tiered process.  *See Hipp*, 252 F.3d at 1219. Moreover, *Thomas* and *Nadreau* both involved defendants who were "separate but related" entities.  *Thomas*, 2019 WL 1141573, at *1 (involving a parent company to various subsidiaries, USA Waste Pro, Inc., and its subsidiary, Waste Pro Florida, Inc.); *Nadreau*, 2011 WL 13143146, at *3 (involving Defendants Lush Cosmetics NY, LLC, and Lush Cosmetics, LLC).  While in *Thomas* and *Nadreau* a joint-employment analysis would need to be done only as to those related entities, here, the Court would need to conduct this analysis with regard to Amazon and an unknown number of contracted DSPs nationwide who in turn hire and pay thousands of DAs.

### 3.     Whether the Court Would Lack Personal Jurisdiction Over Amazon on Claims by Out-of-State DAs

In the event the presiding District Judge concludes that Plaintiffs have sufficiently established that there are similarly situated putative class members who desire to opt in, the Undersigned next examines Amazon's argument that if the Court were to conditionally certify the proposed nationwide class, doing so would deprive the Court of personal jurisdiction over Amazon for claims alleged by out-of-state class members.  (Doc. 65 at 26-29).

In cases, such as this one, where jurisdiction arises from a federal statute that is silent regarding service of process, Fed. R. Civ. P. 4(e) directs a court to look to the forum state's long-arm statute in determining the existence of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996); *see also Burris v. Bangert Computer Sys., Inc.*, No. 2:09-CV-201-FTM-29DNF, 2009 WL 3256477, at *2 (M.D. Fla. Oct. 7, 2009) ("Because the FLSA is silent regarding service of process, the Court looks to the Florida long-arm statute to determine the existence of personal jurisdiction.").

Thus, the Court must engage in a two-part inquiry to determine whether it has personal jurisdiction over the nonresident Amazon Defendants:  "(1) whether the forum state's long-arm statute authorizes an exercise of personal jurisdiction; and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment." *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1348 (M.D. Fla. 2018).

As noted by Amazon, a defendant may be subject to Florida's long-arm statute in one of two ways:

> first, section 48.193(1)(a) lists acts that subject a defendant to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they

involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida, *id.* § 48.193(2).

*Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015) (emphasis in original).

Plaintiffs do not challenge Amazon's claim that the Court lacks general jurisdiction over the Amazon Defendants because they were each incorporated in Delaware and each have its principal place of business in Washington. (*See* Doc. 65 at 27). Plaintiffs do take issue with Amazon's assertion that this Court lacks specific jurisdiction over Amazon with respect to any claims by non-Florida class members under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017). (*See* Doc. 65 at 28; Doc. 84 at 6-8).[13]

In *Bristol-Myers*, 678 individually named plaintiffs from 33 states filed a mass products liability action in California against the nonresident defendant pharmaceutical company. *Id.* at 1777-78 (noting that only 86 of the plaintiffs were California residents). The Supreme Court was faced with the issue of whether the Fourteenth Amendment's due process clause permits a state court to exercise personal jurisdiction over named, nonresident plaintiffs' claims asserted against nonresident defendants where there is no connection to the forum state. *Id.* at 1780-82. The Court held that the California court's exercise of personal jurisdiction over the nonresident

---

[13] Plaintiffs also argue that "as a threshold matter" Amazon has waived any argument related to personal jurisdiction as they failed to raise the issue in their motion to dismiss. (Doc. 84 at 6). Amazon counters that they have not waived a personal jurisdiction argument because under Fed. R. Civ. P. 12(g)(2), "[a] party waives a personal jurisdiction defense only if it fails to raise it when it is 'available,'" and as "[t]here were no non-Florida opt-ins at the time that Amazon filed its motion to dismiss," there was no personal jurisdiction defense available. (Doc. 91 at 4). Regardless of whether Amazon has waived the issue, the Undersigned concludes that Amazon's argument lacks merit, as explained in more detail above and below.

defendant violated the Fourteenth Amendment because there was no "connection between the

nonresidents' claims and the state." *Id.* at 1782.  In so holding, the Court noted that "since [its]

decision concerns the due process limits on the exercise of specific jurisdiction by a State, [it

left] open the question whether the Fifth Amendment imposes the same restrictions on the

exercise of personal jurisdiction by a federal court." *Id.* at 1783-84.

Since *Bristol-Myers* issued, several district courts have confronted the issue of whether

*Bristol-Myers*' holding should be extended in the class or collective action context.  While some

courts have extended *Bristol-Myers* to the class/collective action context, *see, e.g.*, *Practice*

*Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 864-65 (N.D. Ill.

2018), *class decertified on other grounds*, 2018 WL 3659349 (N.D. Ill. Aug. 2, 2018), *Maclin v.*

*Reliable Reports of Tex., Inc.*, No. 1:17-cv-2612, 2018 WL 1468821 (N.D. Ohio Mar. 26, 2018),

district courts in the Eleventh Circuit have not, *see, e.g.*, *Lee v. Branch Banking & Tr. Co.*, No.

CV 18-21876-CIV, 2018 WL 5633995, at *6 (S.D. Fla. Oct. 31, 2018), *Dennis v. IDT Corp.*, 343

F. Supp. 3d 1363, 1367 (N.D. Ga. 2018), *Tickling Keys, Inc.*, 305 F. Supp. 3d at 1350-51.

The Undersigned is persuaded by United States District Judge Roy B. Dalton's reasoning

in *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1348 (M.D.

Fla. 2018), a TCPA case involving alleged junk faxes.  In that case, Judge Dalton reasoned:

> Defendants argue that the Court lacks personal jurisdiction over
> [Defendants] regarding the putative class because "[t]he class
> definition includes 'all persons' who 'were sent telephone facsimile
> messages' and is therefore not limited to putative members who
> were sent faxes in Florida." (Doc. 22, pp. 18–19.)  As support,
> Defendants' chiefly rely on *Bristol–Myers Squibb Company v.*
> *Superior Court of California, San Francisco County*, ––– U.S. ––
> –, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017).  Defendants'
> interpretation of *Bristol–Myers* is twice flawed.
>
> First, *Bristol–Myers* was not a class action; rather, it was a multi-
> plaintiff products liability action originally filed in California State

court that named both resident and non-resident plaintiffs. *Id.* at 1778. The U.S. Supreme Court left open "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. Second, the holding of *Bristol–Myers* addressed mass tort actions. The applicability of *Bristol–Myers* in the class-action setting is still an open question. *See id.* at 1789 (Sotomayor, J., dissenting) (explaining that the *Bristol–Myers* opinion did not "confront the question whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured [in that forum]"). For purposes of personal jurisdiction, this distinction is meaningful. *See, e.g., Fitzhenry–Russell, et al. v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-00564-NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017).

"In a mass tort action, like the one in *Bristol–Myers*, each plaintiff is a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints." *Id.* By contrast, in a putative class action, "one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint." *Id.* (citing Fed. R. Civ. P. 23). So the Court declines to extend *Bristol–Myers* to the class action context. *See, e.g., Fitzhenry–Russell*, 2017 WL 4224723, at *4 (declining to extend *Bristol–Myers* to a class action at the motion to dismiss stage); *In re Chinese–Manufactured Drywall Prods. Liability Litig.*, No. 09-2047, 2017 WL 5971622, at *12–13 (E.D. La. Nov. 30, 2017) (same). Hence the Motion is due to be denied on this ground.

*Id.* at 1350-51.

Although this is a FLSA collective action, rather than a class action, the Undersigned is nonetheless persuaded that *Bristol-Myers* is equally inapplicable in this context. In *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017), the Northern District of California examined the application of *Bristol-Myers* in the FLSA collective action context:

Unlike the claims at issue in *Bristol-Myers*, we have before us a federal claim created by Congress specifically to address employment practices nationwide. *See* 29 U.S.C. 202, 207(a). Congress created a mechanism for employees to bring their claims

on behalf of other employees who are "similarly situated," and in no way limited those claims to in-state plaintiffs.  29 U.S.C. 216(b). Thus, our circumstances are far different from those contemplated by the Supreme Court in *Bristol-Myers*.  The result of the rule Title Source urges would be that each putative collective member not residing in either the state where the suit is brought, or a state where the defendant is domiciled, could not be part of the collective action. This would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights.  This result is not mandated by *Bristol-Myer* and this order declines to extend *Bristol-Meyer* in the manner Title Source urges.

It is undisputed that [Defendant] is subject to personal jurisdiction in California to claims brought by Swamy, the sole named plaintiff in this action, which is all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action.

Like the defendant in *Swamy*, it is undisputed here that Amazon is subject to personal jurisdiction in Florida regarding the claims brought by the named Plaintiffs in this action, "which is all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action." *Id.* at 2.  In light of the foregoing, the Undersigned finds no merit in Amazon's personal jurisdiction argument.  Thus, should the presiding district judge determine that this action is appropriate for conditional certification, the Undersigned recommends that the Court find that *Bristol-Myers* is inapplicable to this action and that the Court has personal jurisdiction over the out-of-state Plaintiffs' claims.

### D.    Manner, Method, Timing, and Content of Proposed Notice

All Defendants take issue with numerous aspects of Plaintiffs' proposed manner, method, timing, and content of the proposed notices.  The Undersigned addresses each in turn.

### 1.    Reminder Notice

Defendants challenge Plaintiffs' request that they be permitted to send a reminder notice halfway through the notice period.  (Doc. 62 at 9; Doc. 65 at 39).  They assert that if permitted, putative class members would be inundated with up to six notices:  two via First-Class mail; two

via email; and two via text message.  (Doc. 62 at 9).  Defendants argue that sending a reminder notice is redundant and assert that putative class members could interpret the issuance of multiple notices as judicial encouragement to join the suit.  (*Id.*; Doc. 65 at 39).

The Undersigned agrees that sending a reminder notice is unnecessary, redundant, "and potentially could be interpreted as encouragement by the Court to join the lawsuit." *Rojas v. Garda CL SE., Inc.*, No. 13-cv-23173, 2013 WL 6834657, at *34-35 (S.D. Fla. Dec. 23, 2013) (quoting *Anish v. Nat'l Secs. Corp.*, No. 10-80330-CIV, 2012 WL 3818283, at *2 (S.D. Fla. Sept. 4, 2012)); *see also Trentman v. RWL Commc'ns, Inc.*, No. 2:15-CV-89-FTM-38CM, 2015 WL 2062816, at *5 (M.D. Fla. May 4, 2015); *Palma*, 2014 WL 235478, at *3.  The Undersigned recommends that the Court deny Plaintiffs' request that a reminder notice issue.

### 2.      Dissemination of Notice

Defendants next challenge Plaintiffs' request to send notice via email and via text message and to post notice in Defendants' facilities.  (Doc. 62 at 10-14, 18; Doc. 65 at 36-39).  AG Plus and the MLK Defendants assert that Plaintiffs' failure to provide the actual proposed language of either makes it difficult to assess the propriety of such a request and that "Plaintiffs have simply offered the idea of notice via e-mail and text messages without providing concrete details about these proposed methods." (Doc. 62 at 10).  Thus, these Defendants argue that Plaintiffs' vague request leaves several questions unanswered.  (*Id.*).  Although they recognize that the Middle District of Florida has permitted email notice, they also cite to other courts that have declined to permit such notice when a plaintiff fails to provide a sufficient reason that notice by first-class mail is insufficient.  (*Id.* at 11).  Defendants also warn of the risk of distorted or misleading notification and of the likelihood that putative class members will be inclined to delete or ignore the email.  (*Id.* at 12; *see also* Doc. 65 at 37).

As noted by all parties, this Court has previously permitted notice via email and finds no reason to deny Plaintiffs' request to do so in this instance.  *See, e.g.*, *Williams v. Coventry Health Care of Fla., Inc.*, No. 6:16-CV-731-ORL-41-TBS, 2016 WL 7013530, at *2 (M.D. Fla. Oct. 4, 2016), *report and recommendation adopted*, No. 6:16-CV-731-ORL-41-TBS, 2016 WL 6947354 (M.D. Fla. Nov. 28, 2016); *Palma*, 2014 WL 235478, at *2 ("A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class."); *Stuven v. Texas de Brazil (Tampa) Corp.*, No. 8:12-cv-1283-T-24TGW, 2013 WL 610651, at *6 (M.D. Fla. Feb. 19, 2013) ("The Court is not persuaded that notice by email is too intrusive, and will permit notice to be made in this manner."); *see also Alequin v. Darden Restaurants, Inc.*, No. 12-61742-CIV, 2013 WL 3945919, at *2 (S.D. Fla. July 31, 2013) ("[C]ourts in this Circuit commonly approve email notice to potential opt-in class members in FLSA cases.").  Thus, the Undersigned recommends that email notice be permitted.

With regard to text messages, Defendants argue that a "text message notice can be incomplete and can fail to convey the seriousness of the communication" and that courts have found that text message notice is appropriate only when all other means fail.  (Doc. 62 at 12-13; Doc. 65 at 38).  Defendants also contend that issuing notice via text message is overly intrusive.  (Doc. 65 at 38).

Defendants arguments are well-taken, and the Undersigned finds that Plaintiffs have provided no legitimate basis that justifies issuing notice via text message.  *See, e.g.*, *Sellers v. Sage Software, Inc.*, No. 1:17-CV-03614-ELR, 2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018) ("[T]he Court agrees with Defendants that sending notice via text message is unnecessary and potentially costly for the recipients."); *Miller v. JAH, LLC*, No. 5:16-CV-01543-AKK, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) ("Although the court will not fully foreclose it yet,

the court has serious reservations about sanctioning text messages as a way to reach the potential class.  As counsel for Miller know, some individuals have limited phone plans, and unwarranted text messages may cause these individuals to incur monetary charges.  Moreover, sending potential class members text messages will subject them to the annoyance of unsolicited messages that Congress passed the Telephone Consumer Protection Act, in part, to address.").

Defendants next argue that posting the notice in their facilities is unreasonable and that the Middle District of Florida has approved that practice only after a showing that a defendant has failed to cooperate with the notice process, which is not the case here.  (Doc. 62 at 18; Doc. 65 at 36).  Defendants are correct that this Court has declined to permit posting notice in defendant's facility absent such a showing.  *See Belloso v. Asplundh Tree Expert, Co.*, No. 6:17-CV-2020-ORL-40-GJK, 2018 WL 4760822, at *6 (M.D. Fla. July 18, 2018), *report and recommendation adopted as modified*, No. 6:17-CV-2020-ORL-40-GJK, 2018 WL 4760671 (M.D. Fla. Aug. 24, 2018) ("As Plaintiff does not provide any reason why mail and email will not be effective in reaching the potential class members, his request to post the notice at Defendants' location is denied."); *Gonzalez*, 2014 WL 1248154, at *6 ("The Court notes that other courts have required that Class Notice be posted at the workplace only after a showing that a defendant has failed to cooperate in the collective action process.").  *But see Campbell*, 2016 WL 3626219, at *7 (approving Plaintiff's request that notice be posted).  Plaintiffs have not made the necessary showing that posted notice is warranted, and the Undersigned concludes the request for posted notice is premature and should be denied without prejudice at this time.

### 3.     Disclosure of Information Beyond Names and Addresses

AG Plus and the MLK Defendants next challenge Plaintiffs' request for information beyond putative class members' names and physical addresses, arguing that the additional

information creates privacy concerns and that "[i]nadvertent disclosure could lead to such unintended consequences as identify theft."  (Doc. 62 at 14 (quoting *Altiep v. Food Safety Net Servs. Ltd.*, No. 3:14-CV-00642-K, 2014 WL 4081213, at *6 (N.D. Tex. Aug. 18, 2014)))).  They cite to several cases in which other district courts have denied requests for information "such as social security numbers, dates of birth, phone numbers, and e-mail addresses—especially because notice by first-class mail is more than adequate."  (*Id.*).  Moreover, Amazon urges the Court to require a third-party claims administrator to send notice so that putative class members' privacy rights are protected.

The Undersigned concludes that Plaintiffs have provided no legitimate basis for disclosure of putative class members' phone numbers or social security numbers.  Thus, Defendants should only be required to produce names, mailing addresses, and email addresses. In light of this limitation, the Undersigned further finds and recommends that there is no need for a third-party claims administrator.

### 4.    Electronic-Signature Process

Defendants also object to Plaintiffs' request that putative class members be permitted to electronically sign the consent form via "Adobe Sign."  AG Plus and the MLK Defendants assert that while federal law permits electronic signatures in some settings, it "specifically excepts 'court orders or notices or official court documents (including briefs, pleadings, and other writings) required to be executed in connection with court proceedings.'"  (Doc. 62 at 15 (quoting 15 U.S.C. § 7003(b)(1))).  They argue that the consent forms are a "writing[] required to be executed in connection with" this action.  (*Id.*).  They also argue that while this Court's Administrative Procedures for Electronic Filing permit attorneys to file a document that requires the signature of a non-attorney in an electronic format, the filing attorney must maintain the

signed original until all appeals have been exhausted or the time for seeking appellate review has expired.  (*Id.* at 16).

Moreover, Defendants argue that Plaintiffs' request is unnecessary and that Plaintiffs give no valid reason as to why permitting electronic signatures is necessary.  AG Plus and the MLK Defendants note that where courts have permitted electronic signatures of consent forms, the putative class members were located in remote areas or the defendants did not object.  (*Id.* at 16-17 (citing *Landry v. Swine Oilfield Servs., LLC*, 252 F. Supp. 3d 1079 (D.N.M. 2017); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510 (W.D. Tex. 2015); *White v. Integrated Elec. Technicians*, 2013 WL 2903070, at *9 (E.D. Ia. June 13, 2013); *Jones v. JGC Dallas, LLC*, 2012 WL 6928101, at *4 (N.D. Tex. 2012))).

The Undersigned agrees.  Plaintiffs have provided no justification beyond an otherwise conclusory statement that "this option is in line with the FLSA's remedial purposes and would ensure that the putative class members have the ability to submit their consent forms without additional obstacles standing in their way."  (Doc. 40 at 36).  Thus, the Undersigned recommends that the Court deny Plaintiffs' request that putative class members be permitted to electronically sign the consent form via "Adobe Sign."

### 5.     90-Day Notice Period

Defendants also object to the 90-day notice period, arguing that it is unreasonably lengthy under the circumstances and that Plaintiffs have given no justification.  (Doc. 62 at 17; Doc. 65 at 40).  They note that several individuals have already filed consent to join forms, which shows "that notice is somehow being provided to individuals already."  (Doc. 62 at 17).  They therefore request that the notice period be shortened to 45 days.  "[C]ourts routinely allow for a 90-day opt-in period," and the Undersigned finds that Defendants have provided no justifiable reason to

shorten the notice period.  *Campbell*, 2016 WL 3626219, at *7.  Thus, the Undersigned recommends that the Motion be granted in this respect.

### 6.      14-Day Disclosure Period

Defendants further object to the 14-day disclosure period requested by Plaintiffs as "impermissibly burdensome" and request that the disclosure period be extended to 30 days.  The Undersigned agrees that this amount of time is potentially burdensome and recommends the disclosure period be set at 30 days.

### 7.      3-Year Limitation Period

Defendants next challenge the proposed 3-year limitation period proposed by Plaintiffs. As noted above, Plaintiffs propose varying three-year time periods.  On the one hand, they request that the notice include a three-year statute of limitations period that runs from the date of the Court's ruling on this Motion.  (Doc. 40 at 38).  On the other hand, they request that the notice be sent to putative class members who were paid by the MLK Defendants and "who were solely paid a purported 'day rate' within the three year period [sic] preceding *June 18, 2018*." (Doc. 40 at 1-2) (emphasis added).  Finally, Plaintiffs request that the Court approve the proposed notices that include a three-year time period of "June 18, 2015 *to the present.*"  (Docs. 40-1, 40-2) (emphasis added).  The Undersigned notes that June 18, 2018 is the date the original Complaint was filed.  (Doc. 1).

All Defendants argue that the limitations period contained in the notice should run from the date the notice is sent, rather than the date this action was initiated.  (Doc. 62 at 23; Doc. 65 at 41).  The Undersigned agrees.

29 U.S.C. § 256(b) provides:

> In determining when an action is commenced for the purposes
> of section 255 of this title, an action commenced on or after May 14,

> 1947 under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, or the Bacon-Davis Act, it shall be considered to be commenced in the case of any individual claimant—
>
> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear--on the subsequent date on which such written consent is filed in the court in which the action was commenced.

Thus, the date of notice to putative class members – and not the date the complaint was filed – is relevant to the limitations period.  *See, e.g.*, *Simpkins v. Pulte Home Corp.*, No. 608-CV-130-ORL-19DAB, 2008 WL 3927275, at *9, n.9 (M.D. Fla. Aug. 21, 2008) (authorizing notice to putative class members employed within the three years preceding the date of mailing notice and writing:  "Because the statute of limitations runs until the written opt-in notice is filed with the Court, 29 U.S.C. § 256, it is prudent to calculate the period from the latest date possible"); *see also Reece v. United Health Care of N. Atlanta, Inc.*, No. 1:12-CV-2070-RWS, 2013 WL 895088, at *6 (N.D. Ga. Mar. 8, 2013) (concluding that notice should be limited to individuals employed from the "3 years prior to the Notice mailing date" to the "Notice mailing date" (emphasis omitted)); *Bennett v. Advanced Cable Contractors, Inc.*, No. 1:12-CV-115-RWS, 2012 WL 1600443, at *15 n.10 (N.D. Ga. May 7, 2012) (relying on *Simpkins* to find that the "the relevant date for statute of limitations purposes is three years prior to the mailing date of the Notice approved by the Court in this Order").  The Undersigned recommends that the temporal scope be limited to the last three years from the date the Notice is sent.

Moreover, Amazon argues that the statute of limitations should be limited to two rather than three years because a three-year period applies only where a "willful" violation has occurred, and Plaintiffs have not met their burden of showing any conduct by Amazon was willful.  (Doc. 65 at 41).  Because the Undersigned concludes that the Court should deny conditional certification of the Amazon Local Delivery Class, this argument is moot.  However, in the event the Court should find that conditional certification of the nationwide class is appropriate, the Undersigned recommends that it also find that Plaintiffs sufficiently allege that Amazon's conduct was willful and, therefore, that a three-year statute of limitations period would be appropriate.  *See, e.g.*, *Simpkins*, 2008 WL 3927275, at *9 ("The Court acknowledges that a three-year statute of limitations applies only to 'willful violations' of the FLSA.  However, the determination whether that standard is met in this case is fact determinative and will not be made at the conditional certification stage."  (citation omitted)).

### 8.    Modification of Proposed Notice and Consent Forms to Ensure Neutrality

Finally, Defendants argue that the proposed notice and consent form (Docs. 40-1, 40-2, 40-3) are "incomplete and contain[] inaccuracies," otherwise require[] modifications," and are "both biased and argumentative."  (Doc. 62 at 19; *see also* Doc. 65).  All parties have indicated that they are willing to meet and confer so that they may draft and submit a proposed notice that is acceptable to each party.  (Doc. 65 at 43; Doc. 85 at 8-9; Doc. 93 at 6).  The Undersigned agrees that the parties should attempt to work collaboratively to draft a proposed notice and recommends that the parties be given thirty days to meet and confer so that they may do so.  *See, e.g.*, *Palma*, 2013 WL 6597079, at *7.

## CONCLUSION

Based upon the foregoing, it is **RESPECTFULLY RECOMMENDED** that Plaintiffs'

Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class

Members and Incorporated Memorandum of Law (Doc. 40) be **GRANTED IN PART** and

**DENIED IN PART** as follows:

    1)    The Court deny conditional certification of the proposed Amazon Local Driver

          Class without prejudice.

    2)    The Court grant conditional certification of the MLK Sub-Class under 29 U.S.C.

          § 216(b) based on the following modified class definition:

> Local delivery drivers or driver associates who were paid by
> the MLK Defendants, who worked at the MLK facility in
> Fort Myers, Florida, and who were solely paid a purported
> "day rate" within the three-year period preceding the date on
> which notice is issued by mail or email, whichever is earlier.

    3)    The parties be directed to meet and confer and submit an amended proposed

          notice and consent form consistent with this Report and Recommendation (or any

          order of the presiding District Judge approving, modifying, or rejecting this

          Report and Recommendation) by a date certain for the Court's further

          consideration and approval; alternatively, if the parties cannot agree on a

          proposed notice and consent form, the parties should be directed to submit their

          individual proposed notice and consent forms by a date certain and permitted to

          file any objections to the opposing party's proposed notice and consent form by a

          date certain for the Court's consideration and approval;

    4)    Upon the Court's approval of the final form of the Notice and Consent, the Court

          should set a further schedule for:

     a.       Defendants to produce to Plaintiffs the names, last known mailing addresses, and last known email addresses of all local delivery drivers or delivery associates who were paid by the MLK Defendants, who worked at the MLK facility in Fort Myers, Florida, and who were solely paid a purported "day rate" within the three-year period;

     b.       Plaintiffs to issue the Notice;

     c.       Plaintiffs to file all Consents to Join with this Court; and

     d.       The parties to file an Amended Case Management Report addressing the remaining case management deadlines in this case.

5)     The Court deny the Motion to the extent Plaintiffs seek any greater or other relief than is recommended herein.

Respectfully recommended in Chambers in Ft. Myers, Florida on March 28, 2019.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties