# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

GREGORY GIBBS and TATONYA HUGGINS, on
behalf of themselves and those similarly situated,

        Plaintiffs,

    vs.

MLK EXPRESS SERVICES, LLC, a Florida Limited
Liability Company; AG PLUS EXPRESS, LLC, a
Florida Limited Liability Company; AMAZON.COM,
INC., a Foreign for Profit Corporation; AMAZON
LOGISTICS, INC., a Foreign for Profit Corporation;
AMAZON.COM SERVICES, INC., a Foreign for Profit
Corporation; MANIHONG M. PHANOUVONG,
Individually; and LILA V. PHANOUVONG, Individuals,

        Defendants.

_____/

Case No. 2:18-CV-434-SPC-MRM

## AMAZON'S OPPOSITION TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION [D.E. 129]

Mark E. Zelek
Joseph Magrisso
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL  33131-2339
mark.zelek@morganlewis.com
joseph.magrisso@morganlewis.com

Richard G. Rosenblatt (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, NJ  08540-6241
richard.rosenblatt@morganlewis.com

Christopher K. Ramsey (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA  15219
christopher.ramsey@morganlewis.com

*Attorneys for Defendants Amazon.com, Inc., Amazon
Logistics, Inc. and Amazon.com Services, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   MAGISTRATE JUDGE MCCOY'S REPORT AND RECOMMENDATION ............... 3

III.  ARGUMENT ........................................................................................... 3

     A.    Magistrate Judge McCoy Applied The Correct Legal Standards. ......................... 3

     B.    Magistrate Judge McCoy Correctly Concluded That Plaintiffs Failed To Show That There Are Similarly Situated Employees. ........................................... 8

          1.    It was perfectly appropriate to consider whether all DSPs followed a common policy dictated by Amazon in a case involving joint employer allegations. ................................................................ 8

          2.    Plaintiffs' evidence fails to demonstrate even remotely that DAs were bound together by any nationwide unlawful Amazon policy. .......... 9

          3.    Magistrate Judge McCoy did not improperly disregard Plaintiffs' evidence. ...................................................................... 11

          4.    Plaintiffs' limitation of the collective to day-rate DAs does not cure the infirmities of the putative nationwide collective. ........................ 13

     C.    Magistrate Judge McCoy Correctly Concluded That The Need For Individualized Inquiries Precludes Conditional Certification. ............................. 14

          1.    Joint employment. ................................................................ 14

          2.    Arbitration agreements. .......................................................... 18

     D.    Magistrate Judge McCoy Correctly Concluded That Plaintiffs' Proposed Notice Is Deficient. ............................................................................ 19

IV.  CONCLUSION ........................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguirre-Molina v. Truscapes SW Fla Inc.*,
   No. 15-608, 2016 WL 4472992 (M.D. Fla. Aug. 3, 2016) ............................................4, 6, 12

*Berber v. Hutchison Tree Serv.*,
   No. 15-143, 2018 WL 3869980 (E.D.N.C. Aug. 14, 2018)........................................9, 16, 17

*Blake v. Batmasian*,
   197 F. Supp. 3d 1367, 1371, 1375 (S.D. Fla. 2016) ...................................................7

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) (en banc) ...........................................................11

*Bouthner v. Cleveland Constr., Inc.*,
   No. 11-244, 2012 WL 738578 (D. Md. Mar. 5, 2012) .......................................................5, 14

*Bravo v. On Delivery Servs., LLC*,
   No. 18-1913 (N.D. Cal. 2018) ..........................................................................12

*Brooks v. A Rainaldi Plumbing, Inc.*,
   No. 06-631, 2006 WL 3544737 (M.D. Fla. Dec. 8, 2006) .......................................................7

*Brumbelow v. Quality Mills, Inc.*,
   462 F.2d 1324 (5th Cir. 1972) .........................................................................11

*Carey v. 24 Hour Fitness USA, Inc.*,
   No. 10-3009, 2012 WL 4857562 (S.D. Tex. Oct. 11, 2012) ..................................................11

*Carruthers v. Keiser Sch., Inc.*,
   No. 09-2641, 2010 WL 5055876 (M.D. Fla. Dec. 3, 2010) .......................................................7

*Chalker v. Burlington Coat Factory of Fla., LLC*,
   No. 12-2755, 2013 WL 5954783 (M.D. Fla. Nov. 7, 2013)......................................... *passim*

*Chambers v. Sears Roebuck & Co.*,
   428 F. App'x 400 (5th Cir. 2011) ......................................................................11

*Desimoni v. TBC Corp.*,
   No. 15-366, 2016 WL 8969196 (M.D. Fla. Apr. 25, 2016)......................................................4

*In re: Domino's Pizza Inc.*,
   No. 16-2492, 2018 WL 4757944 (S.D.N.Y. Sept. 30, 2018) .............................................16, 17

*Hart v. JPMorgan Chase Bank, N.A.*,
   No. 12-470, 2012 WL 6196035 (M.D. Fla. Dec. 12, 2012) ...................................5, 12, 19, 20

*Hegedus v. Nexen Corp.*,
   No. 18-10798 (E.D. Mich. 2018) .........................................................................................12

*Herrera v. Mattress Firm, Inc.*,
   No. 17-22048, 2017 WL 4270619 (S.D. Fla. Sept. 26, 2017) ...............................6, 14, 15, 16

*Hoffman-LaRoche Inc. v. Sperling*,
   493 U.S. 165 (1989)................................................................................................................8

*Jacobson v. Comcast Corp.*,
   740 F. Supp. 2d 683 (D. Md. 2010) ................................................................................16, 18

*In re: JPMorgan Chase & Co.*,
   916 F.3d 494 (5th Cir. 2019) ................................................................................................18

*Layton v. DHL Express (USA), Inc.*,
   686 F.3d 1172 (11th Cir. 2012) ............................................................................................16

*Layton v. Percepta, LLC*,
   No. 17-1488, 2018 WL 5492850 (M.D. Fla. Sept. 21, 2018)...............................................5, 7

*Lewis-Gursky v. Citigroup, Inc.*,
   No. 15-2887, 2017 WL 892604 (M.D. Fla. Mar. 6, 2017) ................................................7, 18

*Martin v. Sprint/United Management Co.*,
   No. 15-5237, 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ......................................................8, 9

*Parrilla v. Allcom Constr. & Installation Servs., LLC*,
   No. 08-1967, 2009 WL 1456442 (M.D. Fla. May 22, 2009)...........................................12, 14

*Richardson v. Wells Fargo Bank, N.A.*,
   No. 11-738, 2012 WL 334038 (S.D. Tex. Feb. 2, 2012) .......................................................11

*Rittmann v. Amazon.com, Inc.*,
   No. 16-01554 (W.D. Wash. 2016).........................................................................................12

*Rosales v. El Michoacana LLC*,
   No. 15-711, 2016 WL 7093432 (M.D. Fla. Oct. 20, 2016) ............................................6, 8, 12

*Salley v. PBS of Cent. Fla., Inc.*,
   No. 07-1517, 2007 WL 4365634 (M.D. Fla. Dec. 12, 2007) ...........................................16, 17

*Schumann v. Collier Anesthesia, P.A.*,
   No. 12-347, 2013 WL 645980 (M.D. Fla. Feb. 21, 2013)......................................................4

*Tatum v. B.B.W. Holdings, Inc.*,
     No. 18-11661 (E.D. Mich. 2018) ............................................................................12

*Thomas v. Waste Pro USA, Inc.*,
     360 F. Supp. 3d 1313 (M.D. Fla. 2019) ...................................................................12

*Travelers Home & Marine Ins. Co. v. Calhoun*,
     No. 13-251, 2014 WL 1328968 (M.D. Fla. Apr. 2, 2014) ..................................10, 12

*Trentman v. RWL Commc'ns, Inc.*,
     No. 15-89, 2015 WL 2062816 (M.D. Fla. May 4, 2015) ...........................................6

*Wasilewski v. Silverstar Delivery LTD*,
     No. 18-12167 (E.D. Mich. 2018) ............................................................................12

**Other Authorities**

29 C.F.R. § 778.112 ...........................................................................................................9

## I.    **PRELIMINARY STATEMENT**

Magistrate Judge McCoy got it right when recommending denial of the massive nationwide class of local delivery drivers employed by different Delivery Service Providers (DSPs) all across the country.  He correctly understood the salient characteristic of this case: that "this case is complicated by the fact that Amazon contracts with individual DSPs nationwide who in turn hire DAs [Delivery Associates]."  Report and Recommendation (ECF No. 129) at 20, 41.  The DAs in the putative collective are the employees of numerous DSPs, which, as the evidence already shows, have different policies and practices, including in how they pay DAs.  Plaintiffs attempt to tie together their far-flung putative nationwide collective with nothing but the allegations that its members are drivers who were paid day rates.  But the key point, as recognized in Magistrate Judge McCoy's Report and Recommendation, is that Plaintiffs failed to show that any act *of Amazon's* ties together the putative nationwide collective, including because Plaintiffs' own evidence shows that the DSPs—not Amazon—control DAs' pay.

Magistrate Judge McCoy carefully considered and correctly applied the law in considering factors that courts in this Circuit commonly address at the conditional certification stage, including whether the putative collective members are subject to a common unlawful policy, and whether individualized factual inquiries are needed.  Indeed, it makes sense to consider these factors in light of the unique type of collective for which Plaintiffs seek certification—one challenging the decentralized practices of numerous different employers spread across the country.

It is not Magistrate Judge McCoy's analysis, but Plaintiffs' request for conditional certification, that turns the law on its head.  Plaintiffs' putative collective is simply impractical and fails to comport with the overarching purpose of collective action certification—the promotion of efficient resolution of common issues of law and fact.  In fact, on the most basic level, no party even can identify who would be included in Plaintiffs' requested collective sufficient to allow notice to

issue.  It is undisputed that the hundreds of DSPs nationwide pay DAs in different ways and they may have changed pay practices over time.  Amazon did not control which DSPs paid a day rate or when or for how long such a pay system was used by any particular DSP.  As a result, there would have to be protracted discovery involving thousands of DAs and non-party DSPs just to determine which DSP employers paid a day rate during the limitations period before any determination even could be made as to whom notice must be sent under the collective definition.  The Report and Recommendation properly recognizes that these rampant inefficiencies render conditional certification of the nationwide collective both improper and counterproductive.

Here, the putative collective is decentralized and splintered, with nothing to tether its members together in connection with alleged unlawful conduct.  At most, there are allegations that some—but not all—DSPs paid day rates without paying requisite overtime.  There is nothing, however, that suggests that there is any connectivity between a DSP in the Middle District of Florida to a DSP in Des Moines, Iowa—and the mere fact that they may both contract with Amazon does nothing to advance the claim of a DA of either.  Nor does certification here create the types of efficiencies that FLSA certification was intended to engender.  Rather, all it would do is create a massive litigation for this Court to try to manage and allow Plaintiffs' counsel to go after the deep pockets they crave in the convenience of their own backyard without regard to the convenience or preferences of those they hope to represent.  The law requires more.  If they think that they have a basis for a claim on behalf of DAs outside of their home turf, then counsel should figure out a way to represent such DAs and file a claim on their behalf where those DAs reside.  Of course, however, Plaintiffs' counsel have no such facts and they have no such clients.  They should not be permitted to take advantage of this Court's imprimatur as a tool to solicit clients and claims.

Amazon respectfully requests that the Court overrule Plaintiffs' Objections (ECF No. 144).

## II.   MAGISTRATE JUDGE MCCOY'S REPORT AND RECOMMENDATION

Magistrate Judge McCoy concluded that Plaintiffs failed to show that "there are other similarly situated employees," and further concluded that, because of "several individualized inquiries" regarding the claims of the putative collective members and their alleged joint employment with Amazon, a collective action would be "unmanageable" and would "eviscerate[]" "judicial economy." ECF No. 129 at 14, 22-23, 25-27, 42 (quotation marks and citation omitted).  He was right.

Consistent with case law from this and other Circuits, Magistrate Judge McCoy found that (1) Plaintiffs' evidence did not show the existence of a common unlawful policy by Amazon regarding payment to DAs because Plaintiffs' evidence was "vague," unclear, and conclusory about who was responsible, especially in light of Plaintiffs' admissions that DSPs "pay the DAs," as well as recruit them and determine their workdays; and (2) individualized inquiries were necessary as to whether (a) members of the collective have arbitration agreements; (b) the DSPs' managers, rather than Amazon, instructed DAs to work overtime; (c) the DSPs or Amazon paid DAs; (d) particular DAs were "paid a flat day rate" and thus belong in the collective, or were compensated in "some other manner"; and (e) Amazon jointly employs the DAs.  *Id.* at 20-23, 27.

Finally, Magistrate Judge McCoy rejected certain of Plaintiffs' proposed notice procedures. He agreed with Defendants that "text message notice can be incomplete" and "overly intrusive."  *Id.* at 34 (quotation marks omitted).  He found that Plaintiffs "provided no legitimate basis" for sending notice by text message.  *Id.*  He also concluded that Plaintiffs "provided no legitimate basis" for obtaining the DAs' phone numbers and social security numbers.  *Id.* at 36.

## III.   ARGUMENT

### A.   Magistrate Judge McCoy Applied The Correct Legal Standards.

Plaintiffs argue that the Report and Recommendation applied "an erroneous standard." Plaintiffs' Objections (ECF No. 144) at 2.  The only thing "erroneous" is Plaintiffs' brazenly

inaccurate claim that Magistrate Judge McCoy "held that Plaintiffs had demonstrated they were similarly situated to the putative opt-ins to whom they seek to send notice, but recommended that notice be denied nonetheless." *Id.* at 28. Magistrate Judge McCoy actually concluded that Plaintiffs failed to show that "there are other similarly situated employees" in the putative nationwide collective. ECF No. 129 at 14. Plaintiffs' argument seems to be that Magistrate Judge McCoy should have held that they met their burden simply because he concluded that DAs have similar duties and many are paid day rates,[1] and that he should not have considered anything else—like whether there was a common unlawful policy that bound all DAs together (which there is not) and whether there might be a multitude of individualized inquiries (which there are). ECF No. 144 at 1-2, 22-30.

And contrary to Plaintiffs' argument that Magistrate Judge McCoy applied "a Stage 2 standard" that "no court within the Eleventh Circuit has applied . . . to a pre-discovery motion for conditional certification," *id.* at 4, Magistrate Judge McCoy employed a first-stage analysis—including identifying individual inquiries that would be required to determine whether the putative collective members were similarly situated, finding that no common unlawful policy from Amazon existed to bind the collective, and concluding that the nationwide collective would be inefficient and unmanageable—that matches the same methodology utilized by numerous other courts.

There is nothing "well settled"—as Plaintiffs argue, *id.* at 25[2]—about a proposition that a court is prohibited from analyzing whether individualized inquiries are needed at stage one. Indeed,

---

[1] Plaintiffs ignore that in the same sentence, Magistrate Judge McCoy observed that Plaintiffs "have made only vague allegations regarding 'Amazon's' common illegal payment scheme." ECF No. 129 at 27.

[2] The cases that Plaintiffs cite do not state that a court is precluded from considering at the conditional certification stage the need for individualized inquiries when the evidence, as here, already reflects that such inquiries are needed. Indeed, if that were the case, it raises the question of why Plaintiffs burdened the Court with all the exhibits that they submitted in their effort to try to convince Magistrate Judge McCoy that there was sufficient commonality to justify notice. Moreover, the cases Plaintiffs cite are factually distinguishable. *See Aguirre-Molina v. Truscapes SW Fla Inc.*, No. 15-608, 2016 WL 4472992, at *5 (M.D. Fla. Aug. 3, 2016) (not addressing defendants' argument that individualized inquiries were required; and, unlike here, not involving an alleged joint employer, but rather a single employer that allegedly had a common policy to "not pay overtime"), *report and recommendation adopted*, 2016 WL 4441468 (M.D. Fla. Aug. 23, 2016); *Desimoni v. TBC Corp.*, No. 15-366, 2016 WL 8969196, at *4-5 (M.D. Fla. Apr. 25, 2016) (not involving an alleged joint employer,

multiple courts have denied conditional certification at stage one because individualized inquiries were needed and thus presented manageability problems, undermining the judicial economy rationale of a collective action. *See Layton v. Percepta, LLC*, No. 17-1488, 2018 WL 5492850, at *4 (M.D. Fla. Sept. 21, 2018) (denying conditional certification because "each employee would require an individualized inquiry to determine whether the employee was compelled to work off-the-clock, and, if so, to determine how much time the employee spent working off the clock"), *report and recommendation adopted*, 2018 WL 5442729 (M.D. Fla. Oct. 29, 2018); *Chalker v. Burlington Coat Factory of Fla., LLC*, No. 12-2755, 2013 WL 5954783, at *2-3 (M.D. Fla. Nov. 7, 2013) (denying conditional certification because "individualized inquiries" were necessary, such as whether employees worked without pay due to instructions from individual store managers, not company-wide policy); *Hart v. JPMorgan Chase Bank, N.A.*, No. 12-470, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) (denying conditional certification because "the putative class members were subject to, *inter alia*, different supervisors, [and] timekeeping practices," so that "plaintiff-specific inquiries would be required as to numerous issues including, *inter alia*, whether plaintiffs actually worked 'off the clock,' whether plaintiffs modified their time records to reflect the actual time worked, whether plaintiffs' supervisors were aware of any 'off-the-clock' work, whether plaintiffs agreed to mandatory arbitration, and whether any 'off-the-clock' work fell within the *de minimis* exception to the FLSA").[3]

---

but rather exempt status of employees of single employer), *report and recommendation adopted*, 2016 WL 3626218 (M.D. Fla. July 7, 2016); *Schumann v. Collier Anesthesia, P.A.*, No. 12-347, 2013 WL 645980, at *2 n.2 (M.D. Fla. Feb. 21, 2013) (not involving an alleged joint employer).

[3] *See also Bouthner v. Cleveland Constr., Inc.*, No. 11-244, 2012 WL 738578, at *6, *7 (D. Md. Mar. 5, 2012) (observing that "the question of manageability at the notice stage is an appropriate inquiry, and conditional certification of a collective action should not be granted if adjudication on a class-wide basis would require a cumbersome, individualized analysis of each class member's particular factual circumstances"; and denying conditional certification where plaintiffs did not "allege[] a broad company-wide policy to deprive employees of overtime compensation," which would "require individualized factual inquiries" into, "*inter alia*, what pre and post-shift work was required of that employee; how long those tasks took to complete; was the overtime work regular or sporadic; who demanded the overtime work of the plaintiffs; and how the overtime work differed between [different] sites" (quotation marks and citation omitted)).

Indeed, Magistrate Judge McCoy expressly cited copious authority addressing individualized inquiries at the notice stage. ECF No. 129 at 22-27; *see also, e.g.*, *Herrera v. Mattress Firm, Inc.*, No. 17-22048, 2017 WL 4270619, at *9 (S.D. Fla. Sept. 26, 2017) ("[T]he Court concludes Plaintiffs have not met their burden to show members of the proposed class are similarly situated, as they have not shown the class members were subject to a common payroll scheme or that the economic realities test can be applied on a class-wide basis."); *Chalker*, 2013 WL 5954783, at *3 ("'[I]ndividualized inquiries make the certification of a collective action in this proceeding unwarranted.'" (quoting *Hart*, 2012 WL 6196035, at *5)). Although Plaintiffs weakly try to distinguish these cases by arguing that the courts held that the employees were not similarly situated for reasons *in addition to* the existence of individualized inquiries, (1) Magistrate Judge McCoy also found that DAs are not similarly situated for other reasons, such as the lack of a common unlawful policy; and (2) the fact is that those courts recognized individualized inquiries as part of the "similarly situated" analysis, and even as sufficient to deny conditional certification.

Moreover, Magistrate Judge McCoy accurately stated and followed the law regarding consideration of the existence of a common unlawful policy at the conditional certification stage: "While evidence of a unified scheme, policy, practice, or plan is not required to show that potential class members are similarly situated, 'the existence of such policy or plan is relevant to the Court's exercise of discretion in granting conditional certification in order to satisfy the rationale of a collective action, which is to preserve judicial economy.'" ECF No. 129 at 19 (quoting *Rosales v. El Michoacana LLC*, No. 15-711, 2016 WL 7093432, at *3 (M.D. Fla. Oct. 20, 2016), *report and recommendation adopted*, 2016 WL 7034403 (M.D. Fla. Dec. 2, 2016)).[4] Numerous other courts have utilized the

---

[4] The cases that Plaintiffs cite do not contradict Magistrate Judge McCoy's statement that a common unlawful policy is relevant to the analysis, though not required. *See Aguirre-Molina*, 2016 WL 4472992, at *5 (stating that a common policy is not required, but "is relevant"), *report and recommendation adopted*, 2016 WL 4441468; *Trentman v. RWL Commc'ns, Inc.*, No. 15-89, 2015 WL 2062816, at *3 (M.D. Fla. May 4, 2015) ("Defendants do not object that Plaintiff has sufficiently

approach that Magistrate Judge McCoy used. *See Chalker*, 2013 WL 5954783, at \*1, \*2 ("To show that the potential plaintiffs are similarly situated, the plaintiff must demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." (quotation marks and citation omitted)); *Lewis-Gursky v. Citigroup, Inc.*, No. 15-2887, 2017 WL 892604, at \*5 (M.D. Fla. Mar. 6, 2017) ("[A] 'key consideration is that to be similarly situated, there must be substantial allegations that potential members were together the victims of a single decision, policy, or plan' that violates the FLSA." (quoting *Hart*, 2012 WL 6196035, at \*5)).

Magistrate Judge McCoy followed basic principles applicable to the notice stage analysis. Courts state that, at stage one, "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, *beyond* the mere facts of job duties and pay provisions" because, "[w]ithout such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Blake v. Batmasian*, 197 F. Supp. 3d 1367, 1371, 1375 (S.D. Fla. 2016) (quotation marks omitted).[5] Courts therefore have the discretion to consider at the conditional certification stage whether there is a common unlawful policy and whether there are individualized inquiries that would undermine efficiency, which is the touchstone for conditional certification. *See*

---

shown that their wage policies at issue are common to all cable installers in the proposed class to warrant conditional certification.").

[5] *See also Carruthers v. Keiser Sch., Inc.*, No. 09-2641, 2010 WL 5055876, at \*2 (M.D. Fla. Dec. 3, 2010) (denying conditional certification because allegation that employees were not paid "for working through lunch" was "insufficient" to establish that they were similarly situated, stating: "The fact that violations of the FLSA occurred is not enough to establish similarity for purposes of conditional certification as this alone does not establish a pattern and practice without showing that the violations were more than sporadic occurrences. To conclude that an employee may establish the 'similarly situated' requirement simply by claiming violations of the law by the same employer, would be to conclude that any time employees alleged unpaid overtime due from the same employer, such employees would be 'similarly situated.'" (quotation marks and citations omitted)); *Layton*, 2018 WL 5492850, at \*3 (denying conditional certification where employees "merely allege[d], generally, that it was Defendant's policy to require employees to work off-the-clock," and quoting *Carruthers*), *report and recommendation adopted*, 2018 WL 5442729; *Brooks v. A Rainaldi Plumbing, Inc.*, No. 06-631, 2006 WL 3544737, at \*2 (M.D. Fla. Dec. 8, 2006) ("The fact that the putative class members worked in the same field, in the same geographic area, and all claim to be underpaid, is not enough to warrant even conditional certification in an FLSA action.").

*Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (stating that, as a result of collective actions, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" unlawful conduct); *Chalker*, 2013 WL 5954783, at *1 ("The decision to create an opt-in class under § 216(b) . . . remains soundly within the discretion of the district court." (quotation marks omitted)).

Indeed, examining whether there is a common unlawful policy and whether individualized inquiries are needed is permitted at the notice stage "'in order to satisfy the rationale of a collective action, which is to preserve judicial economy.'" ECF No. 129 at 19 (quoting *Rosales*, 2016 WL 7093432, at *3, *report and recommendation adopted*, 2016 WL 7034403). Doing so makes sense particularly in this case because this case involves employees of many different DSPs throughout the country, which have different pay and other policies.

### B. Magistrate Judge McCoy Correctly Concluded That Plaintiffs Failed To Show That There Are Similarly Situated Employees.

#### 1. It was perfectly appropriate to consider whether all DSPs followed a common policy dictated by Amazon in a case involving joint employer allegations.

Contrary to Plaintiffs' arguments, examination of whether there is a common unlawful policy in cases where plaintiffs sought conditional certification against a company that hired multiple contractors is appropriate. For example, in *Martin v. Sprint/United Management Co.*, No. 15-5237, 2016 WL 30334, at *2 (S.D.N.Y. Jan. 4, 2016), Sprint relied on "Partner Agents" employed by intermediary companies for customer outreach and marketing. The court declined to certify a nationwide class of Partner Agents because the plaintiffs did not "show a 'factual nexus' that binds all Agents together as victims of a common unlawful practice." *Id.* at *5 (citation omitted). The court found that there was no Sprint policy, let alone a nationwide policy, giving rise to the allegedly unlawful employment practices. *Id.* at *5-7. The court stated: "Courts have been especially hesitant

to grant conditional certification of a vast class where structural considerations—such as . . . the presence of intermediary entities between the company and the members of the putative collective—cast doubt on the claim that uniform company policies governed workers across a sprawling geographic area." *Id.* at *8; *see also Berber v. Hutchison Tree Serv.*, No. 15-143, 2018 WL 3869980, at *4, *6 (E.D.N.C. Aug. 14, 2018) (denying conditional certification as to alleged joint employers, partly because the plaintiff's "pleadings and affidavits [did] not set forth a minimal factual showing that [they] employed a common practice or policy that violated the FLSA").[6]

### 2.   Plaintiffs' evidence fails to demonstrate even remotely that DAs were bound together by any nationwide unlawful Amazon policy.

As Magistrate Judge McCoy found, Plaintiffs have not shown that Amazon implemented any common unlawful policy.  ECF No. 129 at 20-22.  In their self-described "avalanche of evidence," ECF No. 144 at 2, Plaintiffs provide no evidence that Amazon maintained a nationwide policy dictating that DSPs pay DAs a day rate, much less an *unlawful* policy directing DSPs not to pay an overtime premium or the applicable minimum wage.[7]  In fact, to the contrary, Plaintiffs admitted in their Motion, ECF No. 40 at 4, and Amended Complaint, ECF No. 35, ¶ 57, that MLK pays Plaintiffs—not Amazon.[8]

Job postings also show that DSPs—not Amazon—control DAs' pay.  Indeed, the fact that some DAs use a day rate, while others pay an hourly rate proves the point—there is no unlawful

---

[6] Notably, Amazon relied upon *Martin* and *Berber* in its Opposition to Plaintiffs' Motion to Conditionally Certify Collective Action, ECF No. 65 at 9-11, and Plaintiffs have not attempted to distinguish or otherwise address them in their briefs filed before the Report and Recommendation or in their Objections—nor can they.

[7] Paying a day rate is not unlawful.  *See* 29 C.F.R. § 778.112 (explaining method of determining the regular rate of an employee who "is paid a flat sum for a day's work . . . without regard to the number of hours worked in the day").

[8] In an effort to mask the lack of evidence presented to prove that Amazon established the alleged unlawful practice or jointly employed DAs, Plaintiffs—as Magistrate Judge McCoy recognized, ECF No. 129 at 20-21—resort to conclusory allegations, asserting that unspecified "Defendants" paid a day rate, failed to pay minimum wages, or failed to pay overtime compensation, ECF No. 40 at 2, 5-6, 15, 20, 26; *see also Berber*, 2018 WL 3869980, at *6 n.2 (stating that "repeatedly using the word 'defendants,' without specifying which defendants[,]" does not support allegation that defendant "maintained an unlawful policy").  These vague assertions purportedly about Amazon are belied by Plaintiffs' specific allegations about DSPs.  ECF No. 40 at 4 (MLK and AG Plus "recruit" and "pay" DAs and "determine the days" on which DAs work).

common pay practice dictated by Amazon.  As Magistrate Judge McCoy noted, the job postings that Plaintiffs themselves submitted show significant differences in pay practices by DSPs, particularly that many are paid an hourly rate.  ECF No. 129 at 23 & n.11.  For instance, one job posting states that the DA's pay is "$15.00 to $18.50 /hour," as well as that overtime is "GUARANTEED" and "always available," while another advertises that "Drivers start at $14 an hour" and "[o]vertime is paid at a rate of one and a half times the normal hourly wage."  ECF No. 40-31 at 20, 36.  In its prior briefs, Amazon identified many other examples from the job postings that *Plaintiffs submitted*, and from additional job postings that Amazon submitted, which reveal that many, if not most, DSPs make clear that DAs would be paid by the hour rather than day rates.  ECF No. 65 at 12-13; ECF No. 66-1; ECF No. 91 at 5.  Moreover, in their Objections, Plaintiffs submit for the first time additional (albeit cumulative) job postings.  It would be "inappropriate to consider [these job postings] presented for the first time in [Plaintiffs'] objections," and the Court therefore should "decline[] to do so."  *Travelers Home & Marine Ins. Co. v. Calhoun*, No. 13-251, 2014 WL 1328968, at *3 (M.D. Fla. Apr. 2, 2014).  But, even if the Court considers the new job postings, they likewise show that DSPs paid DAs hourly rates and overtime.  ECF No. 144-1 at 7, 10, 22, 46, 55, 59, 62, 83, 114, 115, 122, 131, 145.

Accordingly, Plaintiffs' claim that "all of the job descriptions that Plaintiffs proffered" "indicate" payment of day rates is patently false.  ECF No. 144 at 20.  The references to daily wages on which Plaintiffs rely are estimates of total earnings for DAs each day after being paid by the hour or other method—not, as Plaintiffs are attempting to spin it, that employees would be paid flat day rates.  For example, one job description that Plaintiffs claim indicates a rate of "$120.00-$140.00 per day," *id.* at 20 n.15 (citing ECF No. 40-31 at 85), actually states, "$120 to $140 per day (*paid hourly*)[,]" ECF No. 40-31 at 85 (emphasis added).  The other job postings that Plaintiffs single out as showing day rates, ECF No. 144 at 20 n.15, actually show payment by the hour, ECF No. 40-31 at 11

(payment is "[h]ourly"), 16-17 (same), 19-20 (salary is "$15.00 to $18.50 /hour" and overtime is guaranteed), 36 (starting wage is "$14 an hour" and overtime is paid).

Accordingly, not only is there no evidence that Amazon dictated how DSPs paid DAs, but there is substantial evidence that Amazon did not do so. Indeed, against even a cursory review of the record, it is hard to understand how Plaintiffs could assert that they submitted "unrebutted evidence" that "clearly demonstrated that there was a unified pay violation of the FLSA . . ." ECF No. 144 at 3.[9]

### 3. Magistrate Judge McCoy did not improperly disregard Plaintiffs' evidence.

Plaintiffs argue that Magistrate Judge McCoy improperly disregarded certain evidence (other lawsuits and affidavits from those lawsuits, job postings, and consent-to-join forms). ECF No. 144 at 16-21. Once again, this is misstatement. The Report and Recommendation shows that he carefully considered the evidence presented by Plaintiffs and correctly found that it did not show that DAs were similarly situated on a nationwide basis as to their claims against Amazon. ECF No. 129 at 20-23, 25, 27. None of the allegedly disregarded evidence establishes that the employees of DSPs throughout the country are similarly situated:

---

[9] Perhaps sensing that nothing really holds the collective together, Plaintiffs assert the theory that there was "a unified scheme to deprive day rate paid drivers" because Amazon allegedly set "delivery quotas that could not be met within the hour guidelines set by Amazon." ECF No. 144 at 3. But a collective action cannot be based on that theory—even if there was evidence of joint employment by Amazon for all putative collective members—for two reasons. First, binding precedent holds that merely using a "minimum required production" does not constitute a wage-and-hour violation. *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1326 (5th Cir. 1972) ("declin[ing] to rule" that one could "infer an illegal or improper encouragement from the mere existence of a norm"); *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 419 n.54 (5th Cir. 2011) (rejecting contention that "pressure" to meet production goals left employees with "no choice" but to work off-the-clock); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (Fifth Circuit cases decided before October 1, 1981 are binding precedent in the Eleventh Circuit). And second, courts hold that claims of off-the-clock work based on a high workload are unsuitable for collective treatment because they require individualized inquiries, including about each employee's subjective fears and abilities to perform. *See, e.g., Carey v. 24 Hour Fitness USA, Inc.*, No. 10-3009, 2012 WL 4857562, at *2 (S.D. Tex. Oct. 11, 2012) (denying conditional certification where plaintiff argued that defendant "imposed sales goals on [employees] that they could not meet without working overtime" because this theory required "extensive individualized analysis," including into "each individual's sales ability"); *Richardson v. Wells Fargo Bank, N.A.*, No. 11-738, 2012 WL 334038, at *5 (S.D. Tex. Feb. 2, 2012) (denying conditional certification where plaintiffs alleged there was "a company-wide national policy" based on the employees' "alleged difficulty of finishing all their assigned duties within a forty-hour workweek and managers' alleged awareness that employees worked unlogged hours[,]" as "[s]ubjective beliefs or fear about logging overtime hours is insufficient to establish an actual company-wide policy").

- Magistrate Judge McCoy *did* analyze the job postings and found that they show differences in DSPs' pay methods. *Id.* at 23 & n.11.

- The other lawsuits and declarations from those lawsuits that Plaintiffs cite do not rebut the evidence that Amazon did not control DAs' pay. If anything, lawsuits that Plaintiffs cited in their moving papers in fact demonstrate that Amazon did not control DAs' pay because a multitude of positions, claims, and practices were at issue in those cases, and some of the lawsuits did not involve DAs, DSPs, and/or payment by day rates at all.[10]

- Plaintiffs argue that consent forms, by themselves, are relevant to the similarly-situated inquiry. ECF No. 144 at 21. Magistrate Judge McCoy held that the consent-to-join forms were conclusory because they stated without factual support that the opt-ins "are similarly situated." ECF No. 129 at 20. He was correct. To the extent that consent forms are conclusory—as Magistrate Judge McCoy correctly found—they cannot support conditional certification. *See Chalker*, 2013 WL 5954783, at *1 (disregarding conclusory allegations); *Hart*, 2012 WL 6196035, at *5 (same); *Parrilla v. Allcom Constr. & Installation Servs., LLC*, No. 08-1967, 2009 WL 1456442, at *2 (M.D. Fla. May 22, 2009) (same). Also, case law supports disregarding unsworn consents. *Parrilla*, 2009 WL 1456442, at *2 (disregarding opt-ins' consent forms that were filed instead of affidavits).[11]

---

[10] *See, e.g., Tatum v. B.B.W. Holdings, Inc.*, No. 18-11661 (E.D. Mich. 2018) (defining a "day rate" as purporting to pay hourly but instead estimating hours); *Bravo v. On Delivery Servs., LLC*, No. 18-1913 (N.D. Cal. 2018) (concerning fixed payments by shift with multiple shifts available); *Hegedus v. Nexen Corp.*, No. 18-10798 (E.D. Mich. 2018) (allegations that delivery drivers were paid by the hour sometimes and by the route on other occasions); *Wasilewski v. Silverstar Delivery LTD*, No. 18-12167 (E.D. Mich. 2018) (alleging that plaintiff was paid an hourly rate for ten hours of work each day); *Rittmann v. Amazon.com, Inc.*, No. 16-01554 (W.D. Wash. 2016) (involving independent contractor drivers and not DSPs). Plaintiffs even acknowledge that some of the cases involve "warehouse associates," "IT Support Engineers," and "couriers," ECF No. 40 at 18-19 n.13, yet they somehow believe that they are relevant.

[11] The cases that Plaintiffs cite do not address whether consents may be used even if they are conclusory or unsworn. *See Thomas v. Waste Pro USA, Inc.*, 360 F. Supp. 3d 1313 (M.D. Fla. 2019); *Rosales*, 2016 WL 7093432, *report and recommendation adopted*, 2016 WL 7034403; *Aguirre-Molina*, 2016 WL 4472992, *report and recommendation adopted*, 2016 WL 4441468.

### 4. Plaintiffs' limitation of the collective to day-rate DAs does not cure the infirmities of the putative nationwide collective.

Finally, Plaintiffs argue that the existence of payment methods other than day rates does not make putative collective members "dissimilar" because only DAs "who were paid a day rate without overtime compensation" would receive notice. ECF No. 144 at 20. Plaintiffs miss the point of these differences.

The significance is twofold. First, differences in how DAs are paid show that Amazon does *not* control DAs' pay, and therefore cannot provide the glue to hold the putative collective together. And second, Plaintiffs ignore Magistrate Judge McCoy's conclusion that each DA would have to be examined individually to determine whether he or she was paid a day rate and should be on the notice list, which "may prove unmanageable and would cut against the purpose of collective actions—*i.e.*, judicial economy." ECF No. 129 at 23 & n.11. Indeed, the lack of evidence of a common unlawful policy by Amazon or that Amazon even knows how all DSPs pay their DAs at various times raises the question as to how Amazon even would determine to whom notice should be sent if this case were certifiable on a nationwide basis. Under their theory, Plaintiffs still would have to take discovery from hundreds of non-party DSPs who set their own pay terms to find out if those DSPs ever paid a day rate without offering overtime and, if so, whether they did so to DAs who serviced the DSPs' accounts with Amazon. To this day, Plaintiffs offer no vehicle—let alone one that is efficient and manageable— to accomplish this necessary task before notice ever were to go out. It is one thing for an employer that operates nationwide to generate a list of class members that it employs, it is quite another thing entirely to go to every contractor around the country to ask a series of questions about how they pay their employees, whether they pay overtime, how that overtime is calculated, when they paid pursuant to a day rate (if they did so), and who performed deliveries to Amazon customers pursuant to each payment method and when. This not only would be unjust, it would be the epitome of inefficiency.

C.    **Magistrate Judge McCoy Correctly Concluded That The Need For Individualized Inquiries Precludes Conditional Certification.**

1.    **Joint employment.**

Magistrate Judge McCoy reviewed Plaintiffs' evidence that Amazon is a joint employer and Amazon's evidence to the contrary.  ECF No. 129 at 25.  He concluded that the undisputed fact that Amazon contracts with the DSPs that hire and pay DAs made individualized inquiries inevitable.  *Id.* Magistrate Judge McCoy is correct.  The conflicting evidence precludes Plaintiffs' joint employment theory from being litigated using common, class-wide proof, and the required individualized inquiries would undermine judicial economy.

It is important to note that Magistrate Judge McCoy did not rule on whether Amazon is a joint employer, which he stated would be "premature."  *Id.* (quotation marks omitted).  Instead, Magistrate Judge McCoy considered whether individualized inquiries would be needed to resolve that issue given the evidence and the nature of the putative collective.  *Id.*

Because Plaintiffs seek conditional certification of a collective of DAs who work for a multitude of different DSPs nationwide, the joint employment factors would have to be analyzed anew for each DA of each DSP in the country to determine whether Amazon is a joint employer of each DSP's DAs.  The need for these individualized inquiries warrants denial of conditional certification. *See Bouthner*, 2012 WL 738578, at *6-7 (denying conditional certification in case that "involve[d] two separate construction sites, a general contractor, three subcontractors, and individual Plaintiffs that worked at different locations and for different combinations of employers" because "individualized questions [about who was an employer] would necessarily predominate regarding which defendant hired each plaintiff, which defendant supervised them, which defendant determined their rate of pay, and the interaction and relationship between the individual defendant"); *cf. Herrera*, 2017 WL 4270619, at *8 (denying conditional certification, and concluding that the factor of "the

nature and degree of the alleged employer's control as to the manner in which the work is to be performed" "require[s] a case-by-case analysis"). Indeed, the need for these individualized inquiries "eviscerates all notions of judicial economy that would otherwise be served by conditional class certification." *Herrera*, 2017 WL 4270619, at *7 (quotation marks omitted).

Plaintiffs argue that Magistrate Judge McCoy "largely disregarded" their evidence that Amazon controls DAs' "terms and conditions of employment"; that Amazon did not present contradictory evidence or dispute Plaintiffs' allegations; and that Plaintiffs' joint employment theory is susceptible to common, class-wide proof. ECF No. 144 at 7, 9, 10, 12-16. Plaintiffs are wrong in all respects.

First, there is no denying that Magistrate Judge McCoy, in fact, *did* consider Plaintiffs' evidence. He even stated that Plaintiffs "highlight numerous ways in which they contend that Amazon held control over DAs and the Plaintiffs' duties." ECF No. 129 at 25 (citing ECF No. 40 at 6-14). But this evidence was not sufficient to find putative members of the collective to be similarly situated vis-à-vis the claim in this case—that they were unlawfully denied overtime pay.

Also contrary to Plaintiffs' argument, and as Magistrate Judge McCoy acknowledged, Amazon *did* present evidence disputing that it is a joint employer. ECF No. 129 at 25 ("Amazon disputes that it is a joint employer." (citing ECF No. 65 at 18-21)).[12] Amazon cited evidence contradicting Plaintiffs' allegations that it controlled pay and other aspects of DAs' employment with DSPs. For example, Amazon explained, and Magistrate Judge McCoy found, that the job postings submitted by

---

[12] Although Plaintiffs argued in their moving papers that factual disputes should not be resolved in connection with their motion and that the Court could not weigh evidence, in their Objections, they contradictorily attempt to benefit from Amazon's choice not to address many of the allegations that Plaintiffs made in their motion about items that do not affect the pay claims made by Plaintiffs. Plaintiffs cannot have it both ways. Amazon's choice to ignore factual allegations on irrelevant alleged policies and practices is not an admission that those allegations are true. Rather, Amazon presented evidence showing the absence of any common policy or practice by Amazon to set the pay of DAs. Magistrate Judge McCoy properly recognized and addressed this evidence.

both parties show that Amazon does not control how DSPs pay DAs.  ECF No. 129 at 20-23.[13]

What was critical to Magistrate Judge McCoy's analysis was that "none of the parties dispute that Amazon contracts with DSPs nationwide who in turn hire DAs," which makes individualized inquiries inevitable.  *Id.* at 25.  Plaintiffs' purported evidence does not change that.

Moreover, Plaintiffs are wrong that their joint employment theory is susceptible to common, class-wide proof.  In this regard, even accepting their evidence for the sake of argument, it is consistent with Amazon merely upholding "contractual standards of quality and timeliness" as would be done in an independent contractor relationship, *Berber*, 2018 WL 3869980, at *5:

- Plaintiffs allege that Amazon gives DAs scanning devices, directs and tracks their routes, sets productivity goals, and sets training guidelines.  ECF No. 144 at 12-14.  But what does that have to do with overtime?  And, in any event, courts routinely hold that entities that told their contractors' employees where to report, set goals to which they had to adhere, and tracked performance did not thereby become joint employers.[14]  Further, courts have found that training is consistent with quality control typical of an independent contractor relationship; an entity does not become a joint employer just by training a service provider.  *See Salley v. PBS*

---

[13] Amazon also submitted supplemental authority showing that in another case against Amazon, each DA testified that his respective DSP, not Amazon, handled his interview, hiring, and termination; determined his schedule and work hours; determined his compensation; issued his wage statement; and, through the DSP's supervisors and dispatchers, directed the work of and communicated with DAs about meal and rest breaks.  Supplemental Authority ECF No. 74.

[14] In *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 691 (D. Md. 2010), the court held that Comcast was not a joint employer of cable technicians employed by installation companies even though it maintained and evaluated compliance with standards, monitored the technicians' locations, specified when they were supposed to be at appointments, and adjusted their routines, reasoning that "Comcast [was] not responsible for the day-to-day management of the technicians[,]" had "no role in developing the Installation Company's human resource policies[,]" and "[did] not dictate the technicians' working conditions, or determine the conditions upon which the technicians[] would receive payment."  In *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1173, 1178 (11th Cir. 2012), the Eleventh Circuit held that defendant DHL was not a joint employer of couriers employed by its contractor even though "DHL dictated what time the packages were available for pick-up each morning" and "occasionally had erratic pick-up orders to which Drivers had to respond," reasoning that "DHL did not exert control as an employer would have."  And in *In re: Domino's Pizza Inc.*, No. 16-2492, 2018 WL 4757944, at *6 (S.D.N.Y. Sept. 30, 2018), the court held that the plaintiffs' allegation that Domino's "exercised control over scheduling by dictating store opening hours and minimum staffing requirements" did not weigh in favor of joint employment because the franchisees "determine[d] which employees will take which shift[.]"  Here, Plaintiffs admit that MLK and AG Plus "determine the days" on which DAs work, which supports that Amazon is not the DAs' joint employer.  ECF No. 40 at 4.

*of Cent. Fla., Inc.*, No. 07-1517, 2007 WL 4365634, at *2-3 (M.D. Fla. Dec. 12, 2007) (holding that defendant was not plaintiff's joint employer even though defendant trained plaintiff). Moreover, the title of the "DSP Service Quality Management Policies" to which Plaintiffs refer itself indicates that the purpose of the training is quality control. ECF No. 144 at 14.

- Plaintiffs allege that Amazon tracks DAs and hires employees to supervise and "train, evaluate, review, and assist" them. *Id.* at 12, 13, 15. As with the control factor, these allegations, even if true, amount to quality control consistent with a contractor relationship—they have nothing to do with payment of overtime. *See Berber*, 2018 WL 3869980, at *5 (holding that allegations that companies "directed putative class members by telling class members what areas needed work and inspecting the work product" did not suffice to show joint employment because "an entity does not become a joint employer by engaging in the oversight necessary to ensure that a contractor's services meet contractual standards of quality and timeliness" (quotation marks and citation omitted)); *Domino's*, 2018 WL 4757944, at *6 (stating that "standard-setting and enforcement through audits and inspections, though extensive, [did] not constitute control of the terms of Plaintiffs' employment," and that "supervision for purposes of quality control does not support a finding of joint employer status").

- Plaintiffs allege that Amazon determines eligibility and instructs DSPs to "discipline" or "terminate" DAs. ECF No. 144 at 13, 14. But Amazon's policies that Plaintiffs cite do not state that Amazon may suspend or terminate DAs' *employment*. Rather, under the Zero Tolerance Policy, Amazon can "exercise the contractual right to require the DSP to suspend the DA *from the Amazon account* . . . ." ECF No. 40-18 at 2-3 (emphasis added). Likewise, the DSP Service Quality Management Policies state that if certain behavior is reported, Amazon "will exercise our contractual right to require the DSP to suspend the DA from the

17

Amazon account . . . ."  ECF No. 40-29 at 2.  Similarly, the declarations that Plaintiffs cite do not clearly state that Amazon instructs DSPs to change the terms and conditions of DAs' employments, as opposed to terminate them from the Amazon account.  *See* ECF Nos. 40-8 ¶¶ 42-43, 40-9 ¶¶ 44-45, 40-10 ¶¶ 31-32, 40-11 ¶¶ 34-35, 83-3 ¶¶ 43-51.  And, in any event, courts hold that influencing the hiring and firing decisions of contractors does not make one a joint employer, let alone for wage-and-hour claims over which the alleged joint employer has no control.  *See Jacobson*, 740 F. Supp. 2d at 689-90, 693 (Comcast's reservation of "the power to 'deauthorize' technicians" for not meeting standards set by Comcast, even if it effectively constituted a firing, was "only in the context of quality control" and did not indicate joint employment).

Whether or not Amazon is a joint employer over some DSPs in some places throughout the country—which Amazon denies—Magistrate Judge McCoy correctly concluded this "'would result in unwieldy, plaintiff-specific inquiries that would run counter to the principles of judicial economy upon which collective certification is based.'"  ECF No. 129 at 26-27 (quoting *Lewis-Gursky*, 2017 WL 892604, at *6).

## 2. **Arbitration agreements.**

Plaintiffs acknowledge that some of the opt-in Plaintiffs have arbitration agreements and some of them do not.  ECF Nos. 40-10 ¶¶ 44-46 & 40-11 ¶¶ 47-49 (stating that two Plaintiffs received arbitration agreements).  It is improper to order notice to be sent to employees with arbitration agreements.  *See In re: JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019) ("[W]e hold that district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action.").  Indeed, if employees must arbitrate, they ultimately would not be able to join this action.  It would waste resources to send them notice, only to have to dismiss them from the case if they opt in.

18

Accordingly, Magistrate Judge McCoy correctly found, ECF No. 129 at 23, that the present record already showed that individualized inquiries will be needed to determine which DAs have arbitration agreements and should be excluded from notice.   This militates against conditional certification.  *See Hart*, 2012 WL 6196035, at *5 (denying conditional certification, and stating that "plaintiff-specific inquiries would be required as to numerous issues including, *inter alia*, . . . whether plaintiffs agreed to mandatory arbitration").[15]

### D.      **Magistrate Judge McCoy Correctly Concluded That Plaintiffs' Proposed Notice Is Deficient.**

Plaintiffs' objections to Magistrate Judge McCoy's recommendation to deny their requests to issue notice by text message and to obtain phone numbers and social security numbers are meritless. ECF No. 144 at 33-34.

Regarding text message notice, Plaintiffs do not address Magistrate Judge McCoy's rationales that "text message notice can be incomplete"; it "can fail to convey the seriousness of the communication"; "courts have found that text message notice is appropriate only when all other means fail"; and it "is overly intrusive."  ECF No. 129 at 34 (quotation marks omitted).  Therefore, they still have not shown a "legitimate basis" for text message notice.  *Id.*  Plaintiffs' request for text message notice is based on unsupported speculation that it would not cost anything to putative collective members.  ECF No. 144 at 33.

Regarding obtaining phone numbers and social security numbers, Plaintiffs argue that they are entitled to obtain phone numbers "because text message notice is appropriate here."  *Id.* at 34.  But, as

---

[15] Plaintiffs cite recent cases involving the transportation worker exemption to the FAA and suggest that the arbitration agreements that some of the putative collective members have signed may not apply.  ECF No. 144, at 30 n.20.  However, it is the existence of an agreement to arbitrate—not whether it is ultimately deemed to be enforceable—that Magistrate Judge McCoy correctly cited as an individualized issue precluding nationwide conditional certification.  Moreover, the defenses to enforcement of arbitration agreements create even more individualized issues for DAs across the country because, even if the FAA were not to apply, the court would have to review the law of every state where there is an arbitration agreement to determine whether the agreement is enforceable under state law.

explained above, Plaintiffs have not shown a legitimate basis for text message notice.  And Plaintiffs

argue that they would use the last four digits of social security numbers in case there are address

changes.  *Id.*  But Plaintiffs have not shown that members of the collective would be unable to obtain

notice without having the last four digits of their social security numbers disclosed, particularly

because Plaintiffs have obtained permission for email notice.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Amazon respectfully requests that the Court overrule Plaintiffs'

objections to Magistrate Judge McCoy's Report and Recommendation.

Dated:  June 4, 2019                              Respectfully submitted,

<u>s/ Christopher K. Ramsey</u>
Christopher K. Ramsey (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, 32nd Floor
Pittsburgh, PA  15219
Telephone:  +1.412.560.3300
eFacsimile:  +1.412.560.7001
christopher.ramsey@morganlewis.com

Mark E. Zelek (Florida Bar No. 667773)
Joseph Magrisso (Florida Bar No. 105352)
**MORGAN, LEWIS & BOCKIUS LLP**
200 South Biscayne Boulevard, Suite 5300
Miami, FL  33131-2339
Telephone:  +1.305.415.3303
eFacsimile:  +1.877.432.9652
mark.zelek@morganlewis.com
joseph.magrisso@morganlewis.com

Richard G. Rosenblatt (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone:  +1.609.919.6609
eFacsimile: +1.609.919.6701
richard.rosenblatt@morganlewis.com

*Attorneys for Defendants Amazon Logistics, Inc.,*
*Amazon.com, Inc. and Amazon.com Services, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 4, 2019, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Christopher K. Ramsey*
Christopher K. Ramsey