UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GREGORY GIBBS and TATONYA
HUGGINS, on behalf of himself and
those similarly situated

          Plaintiffs,

v.                              Case No.:  2:18-cv-434-FtM-38MRM

MLK EXPRESS SERVICES, LLC,
AMAZON LOGISTICS, INC.,
AMAZON.COM SERVICES, INC.,
MANIHONG M. PHANOUVONG,
LILA V. PHANOUVONG,
AMAZON.COM, INC. and AG PLUS
EXPRESS, LLC,

          Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court is United States Magistrate Judge Mac R. McCoy's Report and Recommendation ("R&R") (Doc. 129).  This is a Fair Labor Standards Act ("FLSA") putative collective action. (Doc. 35).  Plaintiffs Gregory Gibbs and Tatonya Huggins move to conditionally certify two classes of delivery driver employees.[2] (Doc. 40).  Defendants MLK Express Services, LLC, Amazon, Manihong Phanouvong, Lila Phanouvong, and AG

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Unless otherwise noted, Gibbs, Huggins, and the opt-in Plaintiffs are called "Gibbs" below.

Plus Express, LLC oppose certification.[3]  Judge McCoy recommends granting conditional certification to a class of local delivery driver employees (the "Local Sub-Class") on a limited basis.  (Doc. 129 at 8-10).  And Judge McCoy recommends denying conditional certification to a nationwide class of driver employees (the "Nationwide Class").  (Doc. 129 at 10-27).  For these reasons, the Court agrees.

## BACKGROUND

Alongside its talking robot cylinders, which answer timeless questions like who sang "Come on Eileen," Amazon sells products online.[4]  (Doc. 40 at 3).  After a sale comes shipping.  (Doc. 40 at 3).  But the Court is not concerned with one- or two-day shipping; rather, this case pertains to the companies that Amazon contracts with to deliver its products.  (Doc. 40 at 4).  At issue are "final mile" carriers that deliver Amazon packages locally across the country.  (Doc. 40 at 4).  Those companies are called delivery service providers ("DSPs").  (Doc. 40 at 6 & n.8).  Two DSPs, MLK and AG Plus, are in Florida.  (Doc. 40 at 4).  MLK and AG Plus hire individuals called delivery associates ("DAs") to deliver the packages.  (Doc. 40 at 5).  MLK operates in Fort Myers, Sarasota, Orlando, Cape Coral, and the surrounding areas.  (Docs. 40 at 4; 85 at 2).

Gibbs and Huggins were DAs for MLK in Fort Myers.  (Docs. 40 at 5; 40-9 at 2-3; 40-13 at 2-3).  Allegedly, Gibbs—along with thousands of current and former DAs around the country—were "directly and jointly employed" by Amazon and local DSPs.  (Doc. 40 at 5).  According to the four-count complaint, the Defendants jointly failed to pay minimum and overtime wages in violation of the FLSA.  (Doc. 35 at 22-25).  As a result, DAs worked

---

[3] All three Amazon Defendants are collectedly called "Amazon."  And the Phanouvong Defendants are referred to individually by first name or together by last name.

[4] The answer is Dexys Midnight Runners.

over forty hours each week without time-and-a-half wages to account for the extra hours. (Doc. 35 at 17).  Absent consideration of the hours worked, these DAs earned a day rate per workday, along with pay for delivered packages after completing a route.  (Doc. 35 at 17).  Depending on the day, MLK paid Gibbs $100 to $150 per day.  (Doc. 35 at 17).  MLK offered "rescue pay" of $1 on each package delivered for another DA after completing a daily route.  (Doc. 35 at 17).

Every day before beginning deliveries, MLK DAs had to unload Amazon trucks. (Doc. 35 at 17).  This typically took two hours, but DAs were not paid for the work.  (Doc. 35 at 17).  Gibbs usually worked between forty-two and sixty-five hours a week; Huggins worked similar hours.  (Doc. 35 at 17-18).  But during the holidays, Huggins worked up to 100 hours per week.  (Doc. 35 at 18).  Seventeen other DAs who worked for DSPs in five states worked similar hours and opted into this case.  (Docs. 7; 8; 15; 16; 22; 25; 56; 58; 75; 77; 81; 98; 100; 103; 109; 126; 130).  Of the named and opt-in plaintiffs, eleven have submitted declarations describing their experience.  (Docs. 40-7; 40-8; 40-9; 40-10; 40-11; 40-12; 40-13; 40-14; 83-3; 83-4; 83-5).

Gibbs seeks to conditionally certify and send a notice to two classes of similarly situated individuals.  (Doc. 40 at 1-2).  The Nationwide Class definition follows:

> All Amazon local delivery drivers or driver associates who were solely paid a purported "day rate" and who worked for any company that contracted with Amazon.com to provide local delivery services at any location within the United States, within the three year period . . . .

(Doc. 40 at 1).  The Local Sub-Class is defined below:

> All local delivery drivers or driver associates, paid by [MLK, AG Plus, and the Phanouvongs], who were solely paid a purported "day rate" within the three year period . . . .

(Doc. 40 at 1-2).  In the R&R, Judge McCoy considers the Motion to Conditionally Certify (Doc. 40), along with various responses, replies, sur-replies, and even a sur-sur-reply. (Docs. 62; 65; 84; 85; 91; 93; 99).  (Doc. 129 at 1-2).  All parties objected or responded in some form, and this matter is ripe for review.

## LEGAL STANDARD

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation.  *See* 28 U.S.C. § 636(b)(1); *see also Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982).  Absent specific objections, there is no requirement that a district judge review factual findings *de novo*, *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993), and the court may accept, reject, or modify, in whole or in part, the findings and recommendations, 28 U.S.C. § 636(b)(1).  If there are timely objections, however, the district court must review those specific objections *de novo*.  *See* 28 U.S.C. § 636(b)(1); *see also Ekokotu v. Fed. Express Corp.*, 523 F. App'x 629, 631 (11th Cir. 2013).  Either way, the district judge reviews legal conclusions *de novo*, even without objection.  *See Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

After careful consideration and an independent review of the file, the Court accepts and adopts in part the R&R (Doc. 129) as explained.  The Court does not adopt Section III.C.3. (Doc. 129 at 28-32).  As Judge McCoy notes, that section is contingent on whether the Court disagrees with the recommendation to deny conditional certification of the Nationwide Class.  (Doc. 129 at 28).  But it does not.  And a ruling on the personal jurisdiction issue discussed in Section III.C.3. is unnecessary.

Turning to the parties' objections, Amazon's requires little discussion. Amazon only objects to the contingent question, so there is no need to reach the issue—as Amazon concedes. (Doc. 136 at 5). Gibbs makes more consequential objections. The Court takes each in turn.

Employees may bring collective actions against employers for FLSA violations. 29 U.S.C. § 216(b). A key feature of FLSA collective actions is that employees wishing to join the suit must affirmatively opt-in. *Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208, 1216-17 (11th Cir. 2001). To maintain a collective action, the plaintiffs must also show they are "similarly situated" to other employees. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). The decision to conditionally certify a class "remains soundly within the discretion of the district court." *Hipp*, 252 F.3d at 1219. Of course, a court's discretion is not unbridled. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). Rather, the court "should satisfy itself" that other employees (1) "desire to opt-in" and (2) "are similarly situated with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (internal quotation marks omitted).

**A. The Two-Step Procedure for Collective Actions**

Preliminarily, it is necessary to address Gibbs' general objection to the R&R for failing to follow the two-step process generally applied in FLSA collective actions. (Doc. 144 at 4). As Amazon argues, this objection lacks merit because the R&R applied the approach. (Doc. 158 at 4-8).

"Within the Eleventh Circuit, district courts are encouraged, but not required, to adopt a two-tiered approach to certification of classes in an FLSA case." *Thomas v.*

*Waste Pro USA, Inc.*, 360 F. Supp. 3d 1313, 1319 (M.D. Fla. 2019).  At the first step, sometimes called the notice stage, courts decide conditional certification based mainly on the pleadings, along with any affidavits and declarations offered by the parties.  *Id.*  A motion for decertification begins the second stage, which typically occurs after discovery.  *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).  But courts within the Eleventh Circuit are not bound by a rigid application of the two-stage certification process.  *E.g.*, *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1276-77 (11th Cir. 2018) ("[N]othing in our circuit precedent *requires* district courts to use this [two-tier] approach." (emphasis in original)); *Morgan*, 551 F.3d at 1260 ("While not requiring a rigid process for determining similarity, we have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions.").

The case is at the notice stage.  And the R&R followed the Eleventh Circuit's recommended procedure.  (Doc. 129 at 6-8 (describing the two-stage standard)).  As Gibbs argues, however, the R&R relied on several factors usually left for the decertification stage.  (Doc. 144 at 25-32).  But that does not signify the R&R abandoned the certification two-step.  And as described below, consideration of those factors is proper at the notice stage in this case.  Thus, the Court overrules Gibbs' objection for failing to follow the two-stage procedure and adopts Section II.A.

## B.  The Local Sub-Class

Gibbs contends that the R&R erred by limiting the Local Sub-Class to the MLK Fort Myers facility.  The Court disagrees.

According to Gibbs, the R&R disregarded evidence that Amazon employed DAs through MLK and AG Plus.  (Doc. 144 at 32).  Gibbs points to four pieces of evidence: (1)

two declarations of MLK DAs who stated their hiring paperwork went through AG Plus (Docs. 40-8 at 3; 40-9 at 3); (2) Manihong hired Gibbs and worked out of MLK's Sarasota location (Doc. 40-9 at 3); (3) a DA complained to Manihong about overtime pay (Doc. 40-14 at 6-7); and (4) the unsupported assertion that MLK pays Fort Myers DAs from Orlando.  (Doc. 144 at 32).  So, as Gibbs concludes, he met his burden to show MLK and AG Plus DAs at all locations are similarly situated through Manihong's knowledge of FLSA violations and failure to rectify them.  (Doc. 144 at 32).  Also, Gibbs faults the R&R for finding the Phanouvongs do not own or operate AG Plus as well as MLK and AG Plus are unrelated.  (Doc. 144 at 32-33).

None of the objections cast any doubt on the R&R's findings.  Gibbs failed to show similarly situated DAs from other locations desired to join the action.  (Doc. 129 at 9). Although some declarations cursorily mention that MLK's other locations "handle" Amazon packages, they do not mention any DA duties outside Fort Myers.  (Docs. 40-7; 40-8; 40-9; 40-12; 40-13; 40-14; 109-1).  While Gibbs declared Manihong works out of Sarasota, he made no statements about DAs at that location or their duties.  (Doc. 40-9 at 3).  Likewise, declarations stating that AG Plus processed new hire paperwork for MLK cannot demonstrate its DAs were similarly situated.  (Doc. 40-8; 40-9).  The R&R cited several Middle District cases when courts limited FLSA collective actions to certain locations.  But Gibbs never addresses those cases.  This is telling.  Consistent with precedent, the R&R properly limited the Local Sub-Class to DAs in Fort Myers because that was the only facility with any evidence offered.  *See, e.g.*, *Monserrate v. Hartford Fire Ins.*, No. 6:14-cv-149-Orl-37GJK, 2015 WL 4068388, at *3 (M.D. Fla. July 2, 2015)

("[D]istrict courts have the discretion to conditionally certify an appropriately localized class.").

Finally, Gibbs objects for the failure to credit an opt-in form of an AG Plus driver in Orlando (Doc. 109-1).  (Doc. 144 at 33).  Leaving any overlapping ownership of MLK and AG Plus aside, the R&R considered the opt-in form.  (Doc. 129 at 4, 12).  Yet one opt-in form, with a conclusory, cut-and-paste statement—"I am similarly situated"—does not show DAs in Orlando are similarly situated and desire to opt-in.  *See, e.g.*, *Benitez-Fajardo v. Seafood on the Table, Inc.*, No. 13-22237-CIV-KING, 2013 WL 12124621, at *2, *5 & n.7 (S.D. Fla. Nov. 19, 2013)*; *Parrilla v. Allcom Constr. & Installation Servs., LLC*, No. 6:08-cv-1967-Orl-31GJK, 2009 WL 1456442, at *2 & n.2 (M.D. Fla. May 22, 2009)*. Moreover—standing alone—it is insufficient to conditionally certify a class against AG Plus.  *See, e.g.*, *Rappaport v. Embarq Mgmt. Co.*, No. 6:07-cv-468-Orl-19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007)* ("Indeed, federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where, as here, the plaintiffs attempt to certify a broad class based only [on] the conclusory allegations of few employees.").  So the R&R appropriately limited the Local Sub-Class to DAs for MLK.  (Doc. 129 at 9, 41 (limiting the class to "MLK drivers that work in Fort Myers")).

Thus, the Court overrules Gibbs' objections, approves Section II.B., and incorporates it into this Order.  The Local Class is conditionally certified as limited in the R&R to MLK's Fort Myers location.

**B.  The Nationwide Class—Desire to Opt-In**

As for the Nationwide Class, the Court begins with Gibbs' showing the existence of other DAs who desire to opt into this action.  *See Dybach*, 942 F.2d at 1567-68.  The R&R concluded that Gibbs made this showing.  (Doc. 129 at 11-14).  Neither party disputes this finding, and the Court agrees.  No further discussion is necessary, and the Court approves Section II.C.1.

**C.  The Nationwide Class—Similarly Situated**

Next, FLSA collective action plaintiffs must show other employees are similarly situated.  *See id.*  Neither the FLSA nor Eleventh Circuit precisely define the term. *Thomas*, 360 F. Supp. 3d at 1321.  Still, plaintiffs must show a "reasonable basis" for claims that other employees are similarly situated.  *Morgan*, 551 F.3d at 1260.  In general, the similarly situated analysis looks to whether employees have similar "job requirements" and "pay provisions."  *Dybach*, 942 F.2d at 1567-68.  At bottom, the question is "whether employees are similarly situated—not whether their positions are identical."  *Morgan*, 551 F.3d at 1259-60.  During this notice stage, the standard is "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)."  *Id.* at 1260-61 (alteration accepted) (internal quotation marks and citations omitted).  Although the notice stage burden is light, "it is not invisible." *Delano v. MasTec, Inc.*, No. 8:10-CV-320-T-27MAP, 2011 WL 2173864, at *5 (M.D. Fla. June 2, 2011) (internal quotation marks omitted).  In short, "there must be more than 'only counsel's unsupported assertions that FLSA violations are widespread and that additional plaintiffs would [join].'"  *Morgan*, 551 F.3d at 1261 (alteration accepted) (quoting *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)).

Many courts consider these factors to determine whether employees are similarly situated:

> (1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographical location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; and (5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.

*Thomas*, 360 F. Supp. 3d at 1321-22 (alteration accepted) (quoting *Franco v. Bank of Am. Corp.*, 691 F. Supp. 2d 1324, 1326 (M.D. Fla. 2010)).   Some factors can be dealt with quickly.   The first factor favors conditional certification.   *See id.*   All Plaintiffs and putative class members held the same positions: DAs for DSPs that delivered packages for Amazon.   But the second factor weighs against certification.   *See id.*   Gibbs seeks nationwide certification of day-rate compensated DAs, from South Florida to San Francisco at every DSP in between.   Nevertheless, the third factor supports certification because the alleged violations will have occurred within roughly the three years before notice.   *See id.*   The fourth and fifth factors are trickier.   And those are at the heart of the parties' dispute.

*1. Similar Duties and Day Rate Finding*

Preliminarily, it is necessary to correct Gibbs' misreading of the R&R.   He contends that Judge McCoy held "Plaintiffs have established that DAs share similar duties and that many are paid a day rate."   (Doc. 129 at 20).   So, as the argument goes, DAs in the Nationwide Class are similarly situated, and the inquiry should end.   (Doc. 144 at 8-9).   But the quoted sentence in the R&R continues—"this case is complicated by the fact that Amazon contracts with individual DSPs nationwide who in turn hire DAs."   (Doc. 129 at

20).  Over the next eight pages, the R&R explains why the evidence did not show similarly situated employees and how a collective action would not be feasible.  (Doc. 129 at 20-27).  Contrary to Gibbs' belief, the R&R found DAs nationwide are not similarly situated.  (Doc. 129 at 14 ("Plaintiffs have failed to meet their burden to show a 'reasonable basis' for their 'claim that there are other similarly situated employees.'" (quoting *Morgan*, 551 F.3d at 1260))).  Thus, it was not error for the R&R to find the DAs are not similarly situated despite noting that DAs have similar duties and many earn a day rate.  And this objection is overruled.

### 2.  *Failing to Consider Evidence*

Gibbs objects to the R&R for failing to consider three types of evidence.  According to Gibbs, the R&R "inexplicably and painstakingly dismissed virtually all of [Gibbs'] evidence" on the similarly situated inquiry.  (Doc. 144 at 16).  Gibbs is mistaken.  To start the analysis, the R&R recounted all of Gibbs' evidence across four pages.  (Doc. 129 at 15-18).  After doing so, the R&R summarily refused to consider the first category of evidence: similar cases in other federal courts along with the declarations filed by plaintiffs in those cases.  (Doc. 129 at 18).

The R&R explained those declarations and cases did not show similarly situated employees seek to join this case.  (Doc. 129 at 18).  Gibbs mostly looks outside this Circuit for support and contends he offered the declarations to show the existence of similarly situated employees rather than a desire to opt-in.  (Doc. 144 at 16-19).  Many of those cases concerned a distinguishable circumstance, where the affidavits or declarations were from employees with time-barred claims.  *See Tanski v. Avalonbay Cmtys., Inc.*, No. CV 15-6260 (AKT), 2017 WL 10858910, at *11 (E.D.N.Y. Mar. 31, 2017).  To the extent

that Gibbs looks inside this Circuit, he directs the Court to two cases. In one, declarations were offered to show a desire to opt-in, *Adams v. Gilead Grp., LLC*, 280 F. Supp. 3d 1358, 1360 (M.D. Fla. 2017), and in another, declarations were merely considered among other evidence without analysis, *Smith v. Cable Wiring Specialist, Inc.*, No. 2:14-cv-277-FtM-29DNF, 2014 WL 4795160, at *2 (M.D. Fla. Sept. 25, 2014). Neither situation controls here. Again, plaintiffs must show similarly situated employees want to opt into *this case*. *E.g.*, *Dybach*, 942 F.2d at 1567-68. And nearby courts have refused to consider this type of evidence. *See, e.g.*, *Rojas v. Uber Techs., Inc.*, No. 16-23670-Civ-Scola, 2017 WL 2790543, at *2-3 (S.D. Fla. June 27, 2017); *Manzi v. Hartman and Tyner, Inc.*, No. 11-60426-CIV, 2011 WL 2110279, at *2 (S.D. Fla. May 25, 2011); *Branch v. Amtec, LLC*, No. 09-82389-CIV-DIMITROULEAS, 2010 WL 11601107, at *6 (S.D. Fla. Nov. 24, 2010). Regardless, the Court will consider these declarations in an abundance of caution, and the objection is sustained.

As for the other evidence Gibbs challenges (Doc. 144 at 19-21), the R&R considered it. On the second category, the R&R took DA job postings into account, which are discussed below. (Doc. 129 at 18, 23). And third, the R&R considered consent forms and found them unpersuasive on the similarly situated question. (Doc. 129 at 20). Judge McCoy found that the consent to join, or opt-in, forms merely contained an identical conclusory sentence stating, "I am similarly situated to the named Plaintiff in this matter because I performed similar duties for the Defendant and was paid in the same regard as the named Plaintiff." (Docs. 7; 8; 15; 16; 22; 25; 56; 58; 75; 77; 81; 98; 100; 103; 109; 126; 130). While courts rely on opt-in forms as part of the similarly situated analysis, they are usually more probative of whether employees desire to opt-in than whether

employees are similarly situated.  *See Rumreich v. Good Shepherd Day Sch. of Charlotte, Inc.*, No. 2:17-cv-292-FtM-38MRM, 2018 WL 4760798, at *7-9 (M.D. Fla. July 31, 2018), *report and recommendation adopted*, 2018 WL 4773107 (M.D. Fla. Aug. 16, 2018).  This is especially true when the opt-in forms contain identical, cut-and-paste statements that the employees are similarly situated.  *See, e.g.*, *id.*; *Kelley v. Taxprep1, Inc.*, No. 5:13-cv-451-Oc-22PRL, 2014 WL 10248251, at *2 & n.2 (M.D. Fla. Apr. 2, 2014) (collecting cases); *Calvo v. Summit Broadband Inc.*, No. 2:16-cv-746-FtM-38MRM, 2018 WL 3635104, at *10 (M.D. Fla. Apr. 17, 2018), *report and recommendation adopted*, 2018 WL 3635077 (M.D. Fla. May 3, 2018).  Thus, the Court agrees with the R&R's treatment of these two groups of evidence and overrules the objections.

### 3.  Common Policy or Plan

One way for plaintiffs to show employees are similarly situated is through a common policy or plan that violated the FLSA.  *See, e.g.*, *Chalker v. Burlington Coat Factory of Fla., LLC*, No. 8:12-cv-2755-T-23TBM, 2013 WL 5954783, at *1 (M.D. Fla. Nov. 7, 2013).  While "a common or unified policy or plan" is not required for conditional certification, "the existence of such policy or plan is relevant to the Court's exercise of discretion in granting conditional certification in order to satisfy the rationale of a collective action, which is to preserve judicial economy."  *Rosales v. El Michoacana LLC*, No. 2:15-cv-711-FtM-38CM, 2016 WL 7093432, at *3 (M.D. Fla. Oct. 20, 2016), *report and recommendation adopted*, 2016 WL 7034403 (M.D. Fla. Dec. 2, 2016); *e.g.*, *Barron v. Henry Cty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1102-03 (M.D. Ala. 2003); *Layton v. Percepta, LLC*, No. 6:17-cv-1488-Orl-41DCI, 2018 WL 5492850, at *3 (M.D. Fla. Sept. 21, 2018), *report and recommendation adopted*, 2018 WL 5442729 (M.D. Fla. Oct. 29,

2018); *Aguirre-Molina v. Truscapes SW Fla. Inc.*, No. 2:15-cv-608-FtM-38CM, 2016 WL 4472992, at *5 (M.D. Fla. Aug. 3, 2016), *report and recommendation adopted*, 2016 WL 4441468 (M.D. Fla. Aug. 23, 2016).  When examining a common policy or plan, courts look for "detailed allegations regarding the common policy, plan, or scheme that allegedly forms the basis of the alleged FLSA violations."  *See Layton*, 2018 WL 5492850, at *3; *see also Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1236 (S.D. Ala. 2008).

Gibbs challenges the R&R for requiring him to demonstrate Amazon had a common policy or plan on top of showing similarly situated employees.  (Doc. 144 at 22-25).  According to Gibbs, applying this heightened standard was wrong because plaintiffs need not make both showings.  (Doc. 144 at 22-24).  Amazon responds it was appropriate to consider whether DSPs followed Amazon's common policy or plan given the joint employer allegations.  (Doc. 158 at 13-16).  In doing so, says Amazon, the R&R correctly found the evidence did not suggest Amazon had a common policy of dictating how DSPs pay the DAs.  (Doc. 158 at 14).  The evidence shows the opposite: DSPs, not Amazon, control DA pay and many use different pay schemes that Amazon cannot control.  (Doc. 158 at 14-16).

The R&R accurately identifies that a common policy or plan, although not a requirement, is relevant to determining whether employees are similarly situated.  (Doc. 129 at 19).  Although Gibbs showed DAs have similar duties and many earn a day rate, the common policy issue is complicated because Amazon contracts with DSPs who hire DAs.  (Doc. 129 at 20).  The allegations are for a class of DAs paid a day rate, without proper overtime pay, and subject to a common pay policy that violates the FLSA.  (Doc.

40 at 6-20).  Gibbs offered some evidence to demonstrate a common policy, but the R&R found it conclusory and insufficient.  (Doc. 129 at 20-22).

Initially, Gibbs' objection is overruled to the extent that he characterizes the R&R as requiring him to show both a common policy *and* similarly situated employees.  (Doc. 144 at 22-25).  A plain reading of the R&R shows Gibbs was not subjected to the heightened standard he imagines.  Judge McCoy recognizes a common policy is not necessary to show employees are similarly situated and does not treat the lack of showing a common policy as dispositive.  (Doc. 129 at 19-22).

On Gibbs objection to reliance on the lack of a common policy or plan to deny conditional certification, the Court overrules it for three reasons.

First, in denying conditional certification, many courts relied on a plaintiff's failure to show a common policy or plan.  *E.g.*, *Chalker*, 2013 WL 5954783, at *2-3; *Layton*, 2018 WL 5492850, at *3-4.  This may not be a requirement to prove employees are similarly situated, *Grayson*, 79 F.3d at 1095, but it is certainly relevant to the inquiry.  *E.g.*, *Vondriska v. Premier Mortgage Funding, Inc.*, 564 F. Supp. 2d 1330, 1336 (M.D. Fla. 2007).  A common policy is particularly relevant here because Gibbs alleges a nationwide joint employer theory, seeking to hold Amazon liable for overtime violations at an unknown number of DSPs.  As Amazon notes, there must be some "glue" that holds the case together, and a common Amazon policy leading to nationwide FLSA violations would help bind the claims.  *See Beecher v. Steak N Shake Operations, Inc.*, 904 F. Supp. 2d 1289, 1298-1300 (N.D. Ga. 2012).  Yet the Court cannot find anything here sticking Amazon to individual DSP pay policies or overtime violations.  *See Carruthers v. Keiser Sch., Inc.*, No. 8:09-cv-2641-T-33TGW, 2010 WL 5055876, at *2 (M.D. Fla. Dec. 3, 2010)

("To conclude that an employee may establish the similarly situated requirement simply by claiming violations of the law by the same employer, would be to conclude that any time employees alleged unpaid overtime due from the same employer, such employees would be similarly situated." (internal quotation marks and citation omitted)).

Interestingly, while Gibbs objects to reliance on the lack of a common policy, he concedes that he must show a common theory of liability established by common proof. (Doc. 144 at 9-12).  Those appear to be one and the same.  Indeed, Gibbs' common theory is that there is a common policy of FLSA overtime violations across all DSPs contracting with Amazon.  (Doc. 144 at 11 ("[Plaintiffs] assert a common statutory violation of an improper application of the day rate provisions of the FLSA implementing regulations and resulting failure to pay FLSA-mandated overtime premiums.  This allegation is common to Plaintiffs and all potential opt-ins within the defined nationwide Amazon class to whom Plaintiffs seeks [sic] to send notice.")).

Second, the evidence offered on Amazon employing a common policy violating the FLSA are five declarations from DAs for DSPs in Minnesota and Florida (not including MLK or AG Plus).  (Docs. 40-10; 40-11; 83-3; 83-4; 83-5).  Where relevant, these declarations offer nearly identical conclusory statements about Amazon's common policy or plan: "Notwithstanding our excessive overtime hours, Amazon's other drivers and I are not compensated at a time and one-half rate for all of the hours that we work over forty (40) each week due to the Amazon's [sic] illegal payment policy whereby it does not pay overtime at the appropriate rate to its local delivery drivers."  (Doc. 40-10 at 6); see (Docs. 40-11 at 7; 83-3 at 8; 83-4 at 5; 83-5 at 6).  The R&R concluded these declarations are unpersuasive because they lump Amazon and individual DSPs into one and make

allegations against Amazon without differentiating between the separate entities.  (Doc. 129 at 20).  The declarations are also hazy about who pays the DAs at those DSPs; whereas, here, the allegations are clear that MLK and AG Plus pay DAs.  (Doc. 129 at 20-21).  Without more, the R&R reasoned the vague references to Amazon's common policy or plan could not warrant nationwide certification.  (Doc. 129 at 22).  The Court agrees.  *See Kelley*, 2014 WL 10248251, at *2 (finding nearly identical affidavits consisting of conclusory allegations not probative of the similarly situated inquiry); *Ramos v. Burger King Corp.*, No. 8:11-cv-642-T-30MAP, 2011 WL 4634024, at *2 (M.D. Fla. Oct. 6, 2011) ("Plaintiffs' affidavits are not probative of the similarly situated question because they merely offer conclusory allegations and provide no real evidence, beyond their speculative beliefs.").

Even considering the out-of-state declarations and cases, the Court is unconvinced.  None mention a common Amazon pay policy.  (Docs. 40-19; 40-20; 40-21; 40-22; 40-23; 40-24; 40-25; 40-26; 40-27; 40-28).  In fact, these show how DAs that opted into several actions are not similarly situated over pay provisions.  Some declarations show DAs earning a flat day rate, like the DAs here, but not rescue pay.  (Doc. 40-20 at 5; 40-19 at 3; 40-22 at 4).  Others demonstrate several DSP payment schemes, such as hourly or by the route, (Docs. 40-23 at 5; 40-25 at 4; 40-26 at 2; 40-27 at 3; 40-28 at 4), and a flat day rate accounting for regular time and overtime, (Doc. 40-21 at 5).  Another declaration was unclear about payment except alleging a DSP shorted DAs' paychecks.  (Doc. 40-24).  Although one declaration states a Michigan DA complained to Amazon employees about compensation issues at some point, it mentions no common Amazon policy.  (Doc. 40-28).

Third, as Amazon argues in response, much of the evidence contradicts a finding that Amazon has a common policy or plan of FLSA violations.  Of the many job descriptions offered by Gibbs, almost all show different pay schemes.  Most, but not all, prescribe day rates.  Still, there are substantial differences within each DSP's payment of day rates.  These differences compound DSP by DSP, city by city, and state by state.  Take Richmond, California for example, which has at least five DSPs paying a day rate.  The first, Sun Distributing Company, pays its DAs a flat day rate of $165-175, like MLK.  (Doc. 40-31 at 16-17).  At the second, Everyday Logistics Inc., DA pay is "$200 per day (**OVERTIME GUARANTEED**)," but the posting also discloses pay of $15 to $18.50 per hour.  (Doc. 40-31 at 19-21).   Third is Transportation Brokerage Specialists, which offers DAs a day rate of $198 including overtime.  (Doc. 40-31 at 28-29).  Fourth, Direct Delivery Service, Inc. offers $154-175 per day with "an overtime rate paid after 8 hours worked per day."  (Doc. 40-31 at 55-56).  And fifth, Synctruck, LLC pays a $140 day rate plus package bonuses and driver incentives.  (Doc. 83-1 at 50-52).  So within a single city five DSPs pay DAs five different day rates, calculated in five ways, with some taking overtime into account while others do not.[5]  Across the Bay in San Francisco, at least four DSPs use at least five different day rates to pay DAs.  (Docs. 40-31 at 31, 58, 71-75; 83-1 at 47-48).  One of those DSPs, Synctruck, possibly uses two different day rates to compensate San Francisco DAs.  (Doc. 40-31 at 71-75).  Numerous DSPs also pay DAs an hourly rate.  (Doc. 66-1).  In all, the evidence shows broad discrepancies in how DSPs pay DAs, which weighs against a finding of Amazon's common policy violating the FLSA.

---

[5] In Richmond, there is at least one more DSP, FMX, which pays its DAs an hourly wage of $17 and a properly calculated overtime rate of $25.50.  (Doc. 66-1 at 5-6).

This undercuts Gibbs' assertion that he has satisfied his burden by alleging a theory of common liability against Amazon, which can be established by common proof. (Doc. 144 at 10-16).  His evidence does not show Amazon engaged in, or has control of, any common payment policy or plan which violates the FLSA.  His self-described "avalanche of evidence" goes to Amazon's control over DA duties.  (Doc. 144 at 12-16). But Gibbs says nothing about how DAs nationwide are similarly situated "with regard to their pay provisions."  *See Morgan*, 551 F.3d at 1259-60.  About Amazon's common pay policy in violation of the FLSA, the avalanche amounts to little more than a light dusting. The evidence demonstrates that, even if the Court ultimately determined Amazon is a joint employer, it would still need to examine every DSP's payment scheme individually for FLSA violations.  In other words, Gibbs cannot prove with common evidence that the Nationwide Class is similarly situated on Amazon's policy of FLSA violations.

The Court thus agrees that Gibbs fails to show Amazon has a common policy or plan violating the FLSA.  That said, this issue is not dispositive on the similarly situated question, *see Grayson*, 79 F.3d at 1095, so the analysis continues.  (Doc. 129 at 22).

### 4. Individualized Inquiries

Finally, the R&R concludes that various individualized inquiries "militate against conditional certification."  (Doc. 129 at 22).  In most cases, courts leave these questions for the decertification stage.  (Doc. 129 at 22).  Yet it also recognizes courts are not bound by a rigid two-tier approach.  (Doc. 129 at 22).  Judge McCoy notes several impending individualized questions: (1) whether arbitration agreements exist; (2) whether DSPs or Amazon's company-wide policy drove DAs to work overtime; (3) whether Amazon or DSPs paid DAs; and (4) whether each DSP paid DAs on a day rate, hourly, or other basis.

(Doc. 129 at 23).  Faced with those questions, the R&R concludes conditional certification would prove unmanageable and cut against judicial economy, the purpose of FLSA collective actions.  (Doc. 129 at 23).  All these valid concerns were on Judge McCoy's mind before he looked at the elephant in the room: whether Amazon is a joint employer with each DSP.  (Doc. 129 at 24-27).  While the R&R does not answer the merits of the question at this stage, it finds applying the joint employer factors here would be "unwieldy" and "run counter to the principles of judicial economy."  (Doc. 129 at 25-27 (citation omitted)).

Typically, individualized inquiries are reserved for the decertification stage.  *E.g.*, *Vondriska*, 564 F. Supp. 2d at 1335-36.  But many cases considered whether inevitable individualized inquiries lean against conditional certification at the notice stage.  *E.g.*, *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-cv-00470-T-27TBM, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) ("These individualized inquiries make the certification of a collection action in this proceeding unwarranted."); *Chalker*, 2013 WL 5954783, at *3; *Herrera v. Mattress Firm, Inc.*, No. 17-22048-CIV-ALTONAGA/Goodman, 2017 WL 4270619, at *7 (S.D. Fla. Sept. 26, 2017); *Kelley*, 2014 WL 10248251, at *2; *West v. Verizon Commc'ns, Inc.*, No. 8:08-cv-1325-T-33MAP, 2009 WL 2957963, at *7 (M.D. Fla. Sept. 10, 2009); *Layton*, 2018 WL 5492850, at *4.  Ultimately, these inquiries bear on the analysis of whether employees are similarly situated.  *See, e.g.*, *Lewis-Gursky v. Citigroup, Inc.*, No. 8:15-cv-2887-T-24-MAP, 2017 WL 892604, at *7 (M.D. Fla. Mar. 6, 2017); *Udo v. Lincare, Inc.*, No. 8:13-cv-1899-T-23TGW, 2014 WL 5354589, at *11-12 (M.D. Fla. Sept. 17, 2014).  Gibbs tries to distinguish this line of precedent: in those cases, individualized questions were not dispositive; rather, plaintiffs failed to demonstrate

similarly situated employees desired to opt-in, so certification was denied.  (Doc. 144 at 26-27).  Again, Gibbs misunderstands the R&R because he too did not show employees are similarly situated.  (Doc. 129 at 14).  So his distinction falls flat.

Gibbs faults the R&R for considering individualized inquiries that typically are considered at the decertification stage when, like here, the parties did not yet take discovery.  (Doc. 144 at 25-32).  Specifically, Gibbs objects to discussion of the joint employer issue and potential arbitration barriers in the face of unrebutted evidence.  (Doc. 144 at 28-32).  Amazon argues that the R&R properly considered those issues because inevitable individualized inquiries will undermine judicial economy.  (Doc. 158 at 19-24).  As Amazon notes, Gibbs' evidence is only relevant to Amazon's control over DA duties, not DSP pay.  (Doc. 158 at 20-23).

A "major issue" will inevitably be whether Amazon is a joint employer with the DSPs.  (Doc. 129 at 24).  The merits of this question are left for the decertification stage.  *E.g.*, *Lewis-Gursky*, 2017 WL 892604, at *6 ("[C]ourts generally reserve consideration of the joint employment factors until the final, stage-two determination.").  Yet, at the notice stage, plaintiffs must make some basic showing "that the companies are considered one enterprise, or joint employers of the putative class."  *E.g.*, *Nadreau v. Lush Cosmetics, LLC*, No. 2:10-CV-298-FtM-36SPC, 2011 WL 13143146, at *3 (M.D. Fla. Jan. 28, 2011) (internal quotation marks and citation omitted); *see also Thomas*, 360 F. Supp. 3d at 1326-27.  In any event, several decisions within the Middle and Southern Districts considered if the joint employment analysis could "be easily applied on a class-wide basis, or whether [p]laintiffs are so differently situated that applying the [analysis] would require an individualized assessment which eviscerates all notions of judicial economy that would

otherwise be served by conditional class certification." *See, e.g.*, *Herrera*, 2017 WL 4270619, at *6-7 (internal quotation marks and citation omitted) (applying this principle to the economic realities test); *see also Lewis-Gursky*, 2017 WL 892604, at *5 ("Importantly, whether a joint-employment relationship exists is a fact-specific inquiry that must be undertaken on a case-by-case basis."). The R&R concludes application of the joint employer factors will obliterate any inkling of judicial economy here. (Doc. 129 at 24-27).

Gibbs counters, relying most notably on two cases from this District that found joint employment disputes did not preclude conditional certification. (Doc. 144 at 28-29). But those cases had fewer purported joint employers with closer relationships. *Nadreau*, 2011 WL 13143146, at *3 (finding that two "separate but related employers" that "h[e]ld themselves out to the public as the same company" posed no first stage joint employer problem); *Thomas*, 360 F. Supp. 3d at 1315, 1327 (alleging nationwide collective action against a parent company and its "various subsidiaries" who shared, among other things, a CEO). Despite Gibbs' effort to factually distinguish *Herrera* and *Lewis-Gursky*, the R&R explained that—while different procedurally—the concerns over joint employment as an individualized inquiry applies with equal force. (Doc. 129 at 25-27). In sum, the Court agrees with the R&R that joint employer issues will destroy judicial economy of the Nationwide Class, which consists of an unknown number of DSPs separately employing a vast number of DAs and contracting with Amazon.

Next, Gibbs objects to the R&R for considering arbitration. Courts in this district hold that issues surrounding arbitration are normally addressed at the decertification stage or after a motion to compel arbitration. *E.g.*, *Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2016 WL 3626219, at *6 (M.D. Fla. July 7, 2016).

While the Court agrees with that general precedent, in some cases arbitration clauses supported the denial of certification when, like here, many other necessary individualized inquiries also existed. *See Hart*, 2012 WL 6196035, at *5; *Dimery v. Universal Prot. Serv., LLC*, No. 6:15-cv-2064-Orl-41DAB, 2016 WL 7666136, at *5 (M.D. Fla. Mar. 24, 2016) ("Although there are numerous other differences (*e.g.*, some guards are unionized, some have mandatory arbitration agreements), the Court need not belabor the point."). It is unclear how many DSPs the Nationwide Class would include or the ubiquity of arbitration clauses. But two opt-in Plaintiffs alone are potentially subject to arbitration agreements and waived their rights to participate in a collective action. (Docs. 40-10 at 7, 10; 40-11 at 7-8, 11). In FLSA cases, arbitration agreements and collective action waivers are enforceable. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334-36 (11th Cir. 2014). To ameliorate this concern, Gibbs cites a similar case that applied a federal arbitration exemption to a class of Amazon employees. *See Rittmann v. Amazon.com, Inc.*, No. C16-1554-JCC, 2019 WL 1777725, at *2-5 (W.D. Wash. Apr. 23, 2019) (holding that arbitration clauses were unenforceable under the Federal Arbitration Act, then analyzing the substantially similar contracts to determine whether the clauses were enforceable under state law). Even if the Court ultimately agreed, an inquiry would still be necessary here for each individual arbitration clause, with each individual DSP, under each individual state law. *Id.* In short, a slew of individualized inquiries will follow. While not dispositive, the existence of arbitration agreements is among the many other reasons that conditional certification of the Nationwide Class in inappropriate here.

Also, the R&R identified other individualized inquiries that are inevitable. These include (1) whether each DSP pays DAs; (2) how each DA was paid; and (3) who is

responsible, each DSP or Amazon policy, for instructing each DA to work overtime.  (Doc. 129 at 23).  These are all DSP-specific questions to be determined.

Finally, Gibbs objects to the R&R's reliance on individualized inquires because he claims his evidence was unrebutted.  (Doc. 144 at 31-32).  Much of this objection is simply a recitation of Gibbs' earlier disagreement with the R&R's conclusions drawn from the evidence.  Moreover, Gibbs' evidence was not unrebutted.  (Doc. 158 at 20-21).  Amazon offered several exhibits.  One refuted Gibbs' assertion of Amazon's alleged common pay policy or plan by showing that many DSPs pay DAs an hourly rate.  (Doc. 66-1).  Thus, this objection is also overruled.

### 5. Conclusion

For those reasons, the Court approves the finding that Gibbs failed to show the Nationwide Class is similarly situated and approves of the R&R's conclusion to deny conditional certification of the Nationwide Class.  Thus, Section II.C.2. is adopted as discussed above.

## D.  Opt-In Plaintiffs

No parties addressed the fate of the seventeen opt-in Plaintiffs.  Upon filing a notice of consent, an opt-in plaintiff becomes a party plaintiff to the action regardless of conditional certification.  *Mickles*, 887 F.3d at 1278.  Put another way, "conditional certification is solely for notice purposes and does nothing to determine if a party becomes a plaintiff."  *Id.*  When conditional certification is denied, existing opt-in plaintiffs usually "are dismissed from the lawsuit without prejudice and the matter proceeds on the named plaintiff's individual claims."  *Id.* at 1280.  Because the Nationwide Class was denied and the Local Sub-Class limited to MLK, some opt-in Plaintiffs may be left without claims here.

Within fourteen days, the parties are directed to file a joint notice of the opt-in Plaintiffs to be dismissed.  The Court will dismiss those opt-in Plaintiffs when the notice is filed.

**E.  Proposed Notice**

The R&R addresses several aspects of the proposed notice to potential opt-in plaintiffs.  (Doc. 129 at 32-40).  Gibbs objects to three conclusions.

First, Gibbs argues text message notice is appropriate, which the R&R rejects. (Doc. 129 at 34-35).  Without reference to a single case that allowed this notice, Gibbs believes text notice is warranted.  Yet, as several courts recently held, "sending notice via text message is unnecessary and potentially costly for the recipients."  *Sellers v. Safe Software, Inc.*, No. 1:17-CV-03614-ELR, 2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018); *see also Miller v. JAH, LLC*, No. 5:16-cv-01543-AKK, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018).  The Court agrees and the objection is overruled.

Next, Gibbs objects to the R&R for denying his request to obtain putative class members' partial social security numbers.  As Judge McCoy explained, there is "no legitimate basis" for doing so (Doc. 129 at 35-36), and this Court is not in the business of handing out social security numbers without a valid reason.  So the objection is overruled.

Finally, Gibbs notes that the FLSA Scheduling Order (Doc. 92) tolled the claims of any DAs who could receive notice from the date of the Scheduling Order in November 2018 until the parties filed the Case Management Report (Doc. 154) in May 2019.  (Doc. 144 at 34).  No Defendants responded to this objection, but the Court need not address the issue at this time.  Every MLK opt-in Plaintiff began working for MLK after July 2017, and there is no indication any MLK drivers have time-barred claims.  From the evidence on the Local Sub-Class, therefore, it appears the three-year limitations period set out in

the R&R will encompass all MLK DAs who could be in the class.  So there is no need to modify the Local Sub-Class definition.

Thus, the Court approves and incorporates Section II.D. as described here.

**F.  Conclusion**

For those reasons, the R&R is accepted and adopted in part.  The Court adopts Sections I. and II.A.-B, along with Sections II.C.-D. to the extent described above.

Accordingly, it is now

**ORDERED:**

1.  The Report and Recommendation (Doc. 129) is **ACCEPTED and ADOPTED in part** and the findings are incorporated into this Order.

2.  Plaintiffs' Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members (Doc. 40) is **GRANTED and DENIED in part**.

    a.  The Court **DENIES** conditional certification of the proposed Nationwide Class without prejudice.

    b.  The Court **GRANTS** conditional certification of the Local Sub-Class under 29 U.S.C. § 216(b).  But the Court modifies the class definition:

    > Local delivery drivers or driver associates who were paid by the MLK Defendants, who worked at the MLK facility in Fort Myers, Florida, and who were solely paid a purported "day rate" within the three-year period preceding the date on which notice is issued by mail or email, whichever is earlier.

    c.  The parties are **DIRECTED** to meet and confer, then submit an amended proposed notice and consent form consistent with the Report and Recommendation (Doc. 129) and this Order on or before **July 9,**

2019.  **ALTERNATIVELY**, if the parties cannot agree, then they are **DIRECTED** to submit their individual proposed notice and consent forms on or before **July 9, 2019**.  Any objections to the opposing party's proposed notice and consent form must be filed on or before **July 23, 2019**, for the Court's consideration and approval.

d.   The parties are **DIRECTED** to file a joint notice to the Court of the opt-in Plaintiffs to be dismissed by **July 9, 2019**.

3.   Upon Court approval of the final notice and consent form, the Court will issue a scheduling order on the outstanding issues identified in the Report and Recommendation (Doc. 129 at 42).

4.   Any relief sought in the Motion (Doc. 40) not recommended in the Report and Recommendation (Doc. 129) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 26th day of June, 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record